******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# DENISE A. GARVEY *v.* STANLEY M. VALENCIS
## (AC 38407)

Lavine, Sheldon and Pellegrino, Js.

*Syllabus*

The plaintiff mother appealed to this court from the judgment of the trial court sustaining the emergency ex parte custody order denying the plaintiff visitation with the parties' minor child. The defendant father was awarded, and has maintained, sole legal and primary physical custody of the child since 2005. In May, 2015, a physical confrontation had occurred between the child and the plaintiff during a regularly scheduled visit at the plaintiff's home. Shortly after that incident, the defendant filed an emergency ex parte order of custody pursuant to the applicable statute (§ 46b-56f), which the court granted, finding that an immediate and present risk of physical or psychological harm to the child existed. The court suspended the plaintiff's visitation rights, denied her any contact with the child and scheduled a hearing on the matter to be held nine days later. The court subsequently conducted an evidentiary hearing on the ex parte application on the scheduled day in May, 2015, and also conducted two hearings in June, 2015, as well as a final hearing in September, 2015. Thereafter, the court issued a memorandum of decision on the ex parte order of custody, finding, by clear and convincing evidence, that its May, 2015 orders were appropriately entered, and that a current, immediate, and present risk of psychological harm to the child existed. *Held*:

1. The plaintiff could not prevail on her claim that the court improperly entered the emergency ex parte custody order in violation of § 46b-56f (c), which requires an effort to hear from the other party, because she was available, desired to participate, and was present in the courthouse when the court entered the ex parte order: the text of § 46b-56f does not require that the court provide a respondent with the opportunity to be heard prior to ordering emergency ex parte relief, as § 46b-56f provides that the court may, prior to or after a hearing, issue an emergency order for the protection of the child if it finds that an immediate and present risk of physical danger or psychological harm to the child exists, and that the applicant submit an affidavit detailing the conditions requiring an emergency ex parte order, stating that the emergency ex parte order is in the best interests of the child, and stating the actions taken to notify the respondent, or if no actions were taken to inform the respondent, explaining why the court should consider such an application on an ex parte basis absent such notification efforts.

2. The plaintiff's claim that § 46b-56f (c) mandates that a hearing be completed within fourteen days after the ex parte emergency order is issued was unavailing; the statute provides that a hearing must be scheduled no later than fourteen days after the ex parte emergency order is issued, but does not provide that the hearing must be both scheduled and completed within that time period, and, when read together as a consistent whole, it was obvious that the statute contemplates that the hearing may not be completed within fourteen days of the emergency ex parte order, as the statute specifically provides for a postponement and continuance under certain conditions, and to require the hearing to be completed within fourteen days may lead to an absurd result if all parties are unable to present evidence within that time period.

3. The plaintiff could not prevail on her claim that the trial court's ex parte order expired automatically after thirty days, pursuant to the applicable rule of practice (§ 4-5), and that the court, thus, lost jurisdiction over the ex parte application; the court scheduled and commenced the May, 2015 hearing on the ex parte emergency order within fourteen days from the date that the order was issued, and where, as here, the trial court determined on each day of the hearings, on the basis of the evidence presented, that there was good cause for the ex parte order to remain in effect, the order did not automatically expire and remained in effect until the court properly rendered its judgment.

4. The plaintiff could not prevail on her claim that the trial court violated

her constitutional right to procedural due process by entering the ex parte custody order and then extending the order for an unreasonably lengthy period of time: it was not necessary for this court to determine at what point a delay in the postdeprivation hearing would become a violation of the plaintiff's right to due process because no constitutional violation occurred, as the plaintiff was provided with ample opportunity to be heard on the matter, and, although the postdeprivation hearing spanned 112 days following the entry of the ex parte emergency order, the plaintiff contributed to the delay by presenting multiple witnesses out of order, filing motions that had to be addressed and expanding the scope of evidence; moreover, the plaintiff waived her right to object to the length of the hearing, given her consent to the four scheduled postponements and continuances, as well as her course of conduct over the 112 days that the hearing took to complete.

5. The trial court's finding that an immediate and present risk of psychological harm to the child existed as a result of the May, 2015 confrontation between the child and the plaintiff was not clearly erroneous and was supported by sufficient evidence in the record; the evidence presented showed that the child was visibly upset immediately following the May, 2015 incident and expressed his desire to never see the plaintiff again, and evidence of a decline in the child's psychological well-being following the incident, as reflected by his academic and behavioral regression, demonstrated that the child was deeply affected by the incident.

Argued April 25—officially released October 31, 2017

*Procedural History*

Action for custody and visitation rights as to the parties' minor child, brought to the Superior Court in the judicial district of Hartford, where the court, *Simón, J.*, granted the defendant's ex parte application to suspend the plaintiff's visitation rights; thereafter, following evidentiary hearings, the court, *Simón, J.*, rendered judgment sustaining the emergency ex parte custody order, from which the plaintiff appealed to this court; subsequently, the court *Simón, J.*, issued certain orders regarding therapy for the minor child, and the plaintiff filed an amended appeal with this court; thereafter, the court, *Simón, J.*, issued an articulation of its decision. *Affirmed.*

*Charles D. Ray*, with whom was *Brittany A. Killian*, for the appellant (plaintiff).

*John C. Lewis III*, with whom, on the brief, was *Juri E. Taalman*, for the appellee (defendant).

*Robert J. Kor*, for the guardian ad litem of the minor child.

*Opinion*

PELLEGRINO, J. The plaintiff, Denise A. Garvey, appeals from the judgment of the trial court sustaining the emergency ex parte custody order entered pursuant to General Statutes § 46b-56f[1] denying the plaintiff visitation with the parties' child. The order was entered pursuant to the application of the defendant, Stanley M. Valencis. On appeal, the plaintiff claims that: (1) the court improperly entered and extended the emergency ex parte custody order in violation of § 46b-56f, Practice Book § 4-5, and the plaintiff's constitutional right to due process, and (2) there was insufficient evidence to conclude, as the court did, that the incident giving rise to the emergency ex parte order constituted an immediate and present risk of psychological harm to the child.[2] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The parties, who never married one another, lived together for a short period of time during the plaintiff's pregnancy but separated after the birth of their child in 2002. The parties have litigated custodial, support, and visitation rights throughout the child's life. Notably, the defendant was awarded, and has maintained, sole legal and primary physical custody of the child since 2005 pursuant to a Massachusetts judgment. The file in the present matter was opened on June 8, 2007, by action of the plaintiff, who sought to register and enforce the foreign child custody determination in this state. Emily Moskowitz, an attorney, was appointed guardian ad litem for the child on May 20, 2010. On January 14, 2013, the parties stipulated to a gradual increase in the plaintiff's visitation with the child.

On May 10, 2015, a physical confrontation occurred between the child and the plaintiff during a regularly scheduled visit at the plaintiff's home. Believing that his mother was recording a conversation with him regarding a prior missed visit, the child texted the defendant stating that he was not okay and wanted to return home. Shortly thereafter, the defendant received a phone call from the child, but the child did not respond when the defendant answered the phone. Instead, the defendant heard a "significant disturbance." Specifically, the defendant heard the child say: "Let me go. You're hurting me. Stop." The defendant's wife and the guardian ad litem also listened to the disturbance. After conferring with the guardian ad litem, the defendant drove to the plaintiff's home to pick up the child. The police were notified of the situation and arrived at the plaintiff's home shortly after the defendant. The police, after interviewing the plaintiff and the then twelve and one-half year old child, and consulting with the guardian ad litem, concluded it was in the child's best interest for him to return home with the defendant.

On May 12, 2015, the defendant filed an application

for an emergency ex parte order of custody pursuant to § 46b-56f. That same day, the court found that an immediate and present risk of physical or psychological harm to the child existed and granted the defendant's ex parte application. The court suspended the plaintiff's visitation rights and denied her any contact with the child. The court scheduled a hearing on the matter to be held nine days later, on May 21, 2015.

The court conducted an evidentiary hearing on the ex-parte application over several days: May 21, June 16, June 24, and September 1, 2015. Both parties were represented by counsel. Numerous witnesses testified, including the parties and the guardian ad litem. On September 2, 2015, the court issued a memorandum of decision on the ex parte order of custody, finding "by clear and convincing evidence that the orders of May 12, 2015, were appropriately entered and that a current, immediate and present risk of psychological harm to the child exists."

Following oral argument before us, we ordered the court to articulate the factual basis for its conclusion that a current, immediate, and present risk of psychological harm to the child existed. The court articulated, among other things, that several days after the incident, the child was still visibly upset and stated to the guardian ad litem that the plaintiff had "hit him, pushed him, and threw him to the ground," and that "he never wanted to see [her] again." The child's therapist recommended that the child not see the plaintiff at that time. According to the child's tutor, the child was upset, aggravated, and agitated. His ability to stay focused and complete his work had decreased drastically. Academically, the child had regressed by two to three years. Additional facts will be set forth as necessary.

I

The plaintiff claims that the court improperly entered, and extended, the emergency ex parte custody order in violation of § 46b-56f (c), Practice Book § 4-5, and the plaintiff's constitutional right to due process under the fourteenth amendment of the United States constitution and article first, §§ 8 and 10, of the constitution of Connecticut.

As a preliminary matter, we identify our standard of review and the general legal principles relevant to our analysis. "The interpretation and application of a statute, and thus a Practice Book provision, involves a question of law over which our review is plenary." *Wiseman* v. *Armstrong*, 295 Conn. 94, 99, 989 A.3d 1027 (2010). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually

does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Wilton Meadows Ltd. Partnership* v. *Coratolo*, 299 Conn. 819, 825, 14 A.3d 982 (2011).

## A

The plaintiff first claims that the court improperly entered the emergency ex parte custody order in violation of § 46b-56f (c). Specifically, the plaintiff argues that such relief was improper because § 46b-56f (c) "requires an effort to hear from the other party," and that she was available, desired to participate, and was present in the courthouse when the court entered the ex parte order. The defendant argues that § 46b-56f (b) does not require the court to hear from the respondent. We agree with the defendant.

In accordance with § 1-2z, we begin with the relevant text of § 46b-56f. Section 46b-56f (b) provides that: "The application [to the Superior Court for an emergency ex parte order of custody] shall be accompanied by an affidavit made under oath which includes a statement (1) of the conditions requiring an emergency ex parte order, (2) that an emergency ex parte order is in the best interests of the child, and (3) of the actions taken by the applicant or any other person to inform the respondent of the request or, if no such actions to inform the respondent were taken, the reasons why the court should consider such an application on an ex parte basis absent such actions." Section 46b-56f (c) provides in relevant part that: "The court shall order a hearing on any application made pursuant to this section. If, prior to or after such hearing, the court finds that an immediate and present risk of physical danger or psychological harm to the child exists, the court may, in its discretion, issue an emergency order for the protection of the child . . . ."

The text of § 46b-56f (b) does not require that the court provide a respondent with the opportunity to be heard prior to ordering emergency ex parte relief. See *Kinsey* v. *Pacific Employers Ins. Co.*, 277 Conn. 398, 408, 891 A.2d 959 (2006) ("when the language is read as so applied, it appears to be *the* meaning and appears to preclude any other likely meaning" [emphasis in original; internal quotation marks omitted]). Section 46b-56f (b) merely provides that the applicant submit an affidavit detailing the conditions requiring an emergency ex parte order, stating that the emergency ex parte order is in the best interests of the child, and stating the actions taken to notify the respondent, or if no actions were taken to inform the respondent,

explaining why the court should consider such an application on an ex parte basis absent such notification efforts.[3] Accordingly, we conclude that § 46b-56f does not require the court to hear from the respondent before granting the application for emergency ex parte order of custody and issuing appropriate ex parte orders.

B

The plaintiff next claims that § 46b-56f (c) mandates that a hearing be *completed* within fourteen days after the ex parte emergency order is issued. We disagree. Section 46b-56f (c) provides in relevant part: "The court shall order a hearing on any application made pursuant to this section. If, prior to or after such hearing, the court finds that an immediate and present risk of physical danger or psychological harm to the child exists, the court may, in its discretion, issue an emergency order for the protection of the child . . . . If relief on the application is ordered ex parte, the court shall *schedule* a hearing not later than fourteen days after the date of such ex parte order. If a postponement of a hearing on the application is requested by either party and granted, no ex parte order shall be granted or continued except upon agreement of the parties or by order of the court for good cause shown." (Emphasis added.)

To resolve the plaintiff's claim, we turn to the tenets of statutory construction. The court's fundamental objective in construing a statute "is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, [the court] seek[s] to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . § 1-2 directs [the court] first to consider the text of the statute itself and its relationship to other statutes." (Internal quotation marks omitted.) *Allen* v. *Commissioner of Revenue Services*, 324 Conn. 292, 307–308, 152 A.3d 488 (2016), cert. denied,        U.S.    , 137 S. Ct. 2217, 198 L. Ed. 2d 659 (2017). "It is the duty of the court to interpret statutes as they are written . . . and not by construction read into statutes provisions which are not clearly stated. . . . Moreover, principles of statutory construction require the court to construe a statute in a manner that will not frustrate its intended purpose or lead to an absurd result." (Citation omitted; internal quotation marks omitted.) *Mack* v. *LaValley*, 55 Conn. App. 150, 165–66, 738 A.2d 718, cert. denied, 251 Conn. 928, 742 A.2d 363 (1999).

A statute is plain and unambiguous when "the meaning . . . is so strongly indicated or suggested by the [statutory] language as applied to the facts of the case . . . that, when the language is read as so applied, it appears to be the meaning and appears to preclude any other likely meaning." (Emphasis omitted; internal quotation marks omitted.) *Kinsey* v. *Pacific Employers*

*Ins. Co.*, supra, 277 Conn. 407–408. "[S]tatutes should be interpreted so as to form a rational, consistent whole, rather than an irrational and inconsistent statutory scheme. . . . Another principle is that statutes should be interpreted so as to avoid bizarre or unworkable results . . . and courts should interpret statutes on the premise that the legislature intended to accomplish reasonable result. . . . The final principle is that statutes should be interpreted so as to conform to common sense, rather than so as to violate it." (Citations omitted; internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Housing Authority*, 117 Conn. App. 30, 45–46, 978 A.2d 136 (2009), appeal dismissed, 302 Conn. 158, 24 A.3d 596 (2011).

The question presented is the meaning of the language "schedule a hearing." The plaintiff contends that "schedule a hearing" requires the court to hold a hearing and complete it within fourteen days of the ex parte emergency order. We do not agree. The statute provides that a hearing must be scheduled no later than fourteen days after the ex parte emergency order is issued. It does not provide that the hearing must be scheduled and completed within that time period. We reject the plaintiff's invitation to read words into a statute that are not there. If the legislature wanted the hearing completed within fourteen days, it knows how to enact legislation consistent with its intent. See *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 771 n.17, 900 A.2d 1 (2006).

When § 46b-56f (c) is read together as a consistent whole, it is obvious that the statute contemplates that the hearing may not be completed within fourteen days of the emergency ex parte order. The statute specifically provides for a postponement and continuance under certain conditions. To require the hearing to be completed within fourteen days may lead to an absurd result if all parties are unable to present evidence within that time period. The statute promotes the best interest of the child by establishing an expeditious procedure by which the court can promptly protect the child from physical and psychological harm and protect the due process right of the child's parent. The notion that a hearing concerning the custody of a minor child can invariably be completed within fourteen days of the date the emergency ex parte order is issued is unrealistic in light of the schedules of the court and counsel. Common sense would dictate that the hearing continue until all parties have been given an opportunity to present their respective cases. For the foregoing reasons, the plaintiff's claim fails.[4]

C

The plaintiff next claims that the court's ex parte order expired "automatically" after thirty days pursuant to Practice Book § 4-5. The plaintiff argues that because the order expired, the court lost jurisdiction over the

ex parte application, and the order entered pursuant to the court's memorandum of decision was "a nullity." We do not agree.

Practice Book § 4-5 (b) provides in relevant part that: "When an application for a temporary injunction is granted without . . . a hearing, the court shall schedule an expeditious hearing as to whether the temporary injunction should remain in effect. Any temporary injunction which was granted without a hearing shall automatically expire thirty days following its issuance, *unless the court, following a hearing, determines that said injunction should remain in effect.*" (Emphasis added.)

Section 46b-56f (c) provides in relevant part: "If relief on the application is ordered ex parte, the court shall schedule a hearing not later than fourteen days after the date of such ex parte order. If a postponement of a hearing on the application is requested by either party and granted, no ex parte order shall be granted or continued except upon agreement of the parties or by order of the court *for good cause shown.*" (Emphasis added.)

In the present case, the court scheduled and commenced a hearing on the ex parte emergency order within fourteen days from the date that the order was issued. On the first day of the hearing, the plaintiff was permitted to present testimony from some of her witnesses during the time allotted to the defendant to accommodate the schedules of some of the plaintiff's witnesses. At the conclusion of the first day of the hearing, the court stated: "So what I'll do at this time . . . the current orders remain in place as to the ex parte order. I will order the parties to go down and see [the scheduling coordinator] in regards to a new schedule. . . . I know [that the guardian ad litem], based on other cases I had with her, is on vacation next week. . . . So, I'll try and, you know, schedule you in." Counsel for the plaintiff, Martha Dean, stated, "okay." In other words, the plaintiff did not object to the court's continuing the emergency ex parte order.

The hearing continued on June 16, 2015. The following colloquy transpired between the court and Dean:

"[Attorney] Dean: I'm going to move again in the short term to have the normal parenting plan restored immediately. This child has a therapist. [The child] has sole custody with [the defendant]. He lives with [the defendant]. We're talking only about visitation.

"We've heard no testimony of any substantial, significant injury. In fact, we heard testimony to the contrary from the police and from the [guardian ad litem], and we move, again, on the spot, right now, asking the court to put the current orders in place until we can get to the end of this hearing.

"The Court: Attorney Dean, you're out of line. The evidence that I've heard really is not as you say it, and

again, I'm giving you, still, the opportunity to put on your witnesses. But [I do not], based on what I've heard here so far, have the same mindset that you have. My orders remain in place." The plaintiff did not further object to the continuance of the emergency ex parte order.

The hearing reconvened on the afternoon of June 24, 2015, at which time the court stated, in part: "So, all right, folks, look, we're reaching our third day of hearings on the emergency ex parte order. . . . So, I'd like to move this along as quickly as we can." Immediately thereafter, Dean asked that one of the plaintiff's witnesses be taken out of order. The court granted the request.

At the conclusion of the hearing on the afternoon of June 24, 2015, the court indicated to counsel that there would be a two month continuance due to the schedules of two other judges. The court stated: "I will have to do what I need to do based on the evidence that's presented when the hearing finally concludes. But by then, three and one-half months will have passed since the original incident date. It will be, I believe, appropriate if the parties determine it to be in the child's best interest that [the parties] perhaps have a conversation with the guardian ad litem between now and September 1, [2015], two months from now, in regards to current orders and/or what may be the future of this particular case."

"[Attorney] Dean: Your Honor, the important thing to know—we can't get into discussions, but on something as incredible as this, that this mother's ability to see her child has been conditioned on (indiscernible) the removal action of the guardian ad litem. That is so unethical and unscrupulous [that] I have to bring it to your attention.

"The Court: Attorney Dean, I have had the opportunity to listen to all the testimony so far. I don't see your concern.

"[Attorney] Dean: I don't get how (indiscernible) schedules. . . .

"The Court: [A]s I've stated, there is going to be a two month continuance because of the scheduling of the two judges. So, I believe if it's something the attorneys wish to do, they should discuss the matter with the guardian ad litem, and see if there is any middle road here that would be appropriate. If not, we just continue, and we'll see you back here September 1, [2015].

"[Attorney] Dean: Your Honor, could I ask one last request, and that is because we are so close to the close of the moving party's evidence, that if even for an hour or so, this could be concluded, we could at least move for the failure to make out a prima facie case on the evidence and allow . . . .

"The Court: Counsel, there is no way that I'm going to listen to that type of motion based on what I've heard. It's just not going to happen." The plaintiff did not object.

Here, the trial court determined following each day of hearing, on the basis of the evidence presented, that there was good cause for the ex parte order to remain in effect. Therefore, the order did not automatically expire and remained in effect until September 2, 2015, when the final orders were entered. Accordingly, the court retained jurisdiction over the orders and properly rendered judgment in its September 2, 2015 memorandum of decision.

### D

The plaintiff's fourth claim is that the court violated her constitutional right to procedural due process under the fourteenth amendment to the United States constitution and article first, §§ 8 and 10 of the constitution of Connecticut by entering and extending the ex parte custody order. Specifically, the plaintiff argues that a postdeprivation hearing spanning 112 days following the entry of an ex parte emergency order is unreasonable, and that § 46b-56f (c) should be invalidated as applied to the facts of her case. In response, the defendant argues that the plaintiff had her opportunity to be heard and "caused much of the delay . . . by her own requests and motions."

As a preliminary matter, we identify our standard of review and the general legal principles relevant to our analysis. The due process clause demands that an individual be afforded adequate notice and a reasonable opportunity to be heard when the government deprives her of a protected liberty interest.[5] See *Mathews* v. *Eldridge*, 424 U.S. 319, 333–34, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." (Internal quotation marks omitted.) *State* v. *Joyner*, 225 Conn. 450, 470–71, 625 A.2d 791 (1993). The United States Supreme Court has construed the due process clause to further require that a postdeprivation hearing "proceed and be concluded without appreciable delay." *Barry* v. *Barchi*, 443 U.S. 55, 66, 99 S. Ct. 2642, 61 L. Ed. 2d 365 (1979).

The following additional facts are relevant to this claim. The evidentiary hearing began on May 21, 2015, with the plaintiff's counsel being permitted to call three of her witnesses out of order.[6] On June 16, 2015, before continuing with testimony, the court addressed the plaintiff's pending motion in limine to preclude certain evidence and the testimony from the guardian ad litem. The motion was summarily denied. On June 24, 2015, the hearing began with the plaintiff's counsel calling another witness out of order. Additionally, the plaintiff expanded the scope of evidence by introducing testi-

mony concerning a missed visitation on May 6, 2015, an event which did not give rise to the ex parte proceeding. The May 6, 2015 visitation topic was at issue during each of the four days of the hearing on the ex parte emergency order. On the last day of hearing, the court admonished the plaintiff's counsel for her "protracted litigious presentation."[7]

The record, when taken as a whole, indicates that the plaintiff was given ample opportunity to be heard on the matter. The plaintiff called seven witnesses, many of whom were called out of order, delaying the defendant's case-in-chief. Additionally, the plaintiff filed a number of motions that needed to be addressed during the hearing. Furthermore, the court granted the plaintiff wide latitude in litigating the validity of the order, including expanding the scope of testimony. On the basis of the foregoing facts, we conclude that the plaintiff contributed to the delayed resolution of this matter.

"At some point, a delay in the post-termination hearing would become a constitutional violation." *Board of Education* v. *Loudermill*, 470 U.S. 532, 547, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985); see also id. (finding that nine month adjudication is not "unconstitutionally lengthy per se"). Here, however, we need not determine at what point a delay in the postdeprivation hearing would become a violation of the plaintiff's constitutional rights because we conclude that no constitutional violation occurred, as the plaintiff was provided with a reasonable opportunity to be heard and she contributed to the delay of the proceedings.

E

Alternatively, we conclude that the plaintiff waived her right to object to the length of the hearing, given her consent to the four scheduled postponements and continuances, and her course of conduct over the 112 days that the hearing took to complete.

We begin by examining our law regarding the general concept of waiver. "[M]andatory time limitations must be complied with absent an equitable reason for excusing compliance, including waiver or consent by the parties." (Internal quotation marks omitted.) *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 35–36, 848 A.2d 418 (2004). "[W]aiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding. . . . The rule is applicable that no one shall be permitted to deny that [she] intended the natural consequences of [her] acts and conduct. . . . In order to waive a claim of law it is not necessary . . . that a party be certain of the correctness of the claim of its legal efficacy. It is enough if [she] knows of the existence of the claim and of its reasonably possible efficacy." (Internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 469,

10 A.3d 942 (2011). "Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Internal quotation marks omitted.) *Stewart* v. *Tunxis Service Center*, 237 Conn. 71, 80–81, 676 A.2d 819 (1996).

As set forth in part I C of this opinion, at the end of the May 21, 2015 hearing, the court directed the parties to the case flow office to schedule additional dates for the hearing, emphasizing that the current ex parte order would remain in place as the hearing continued. The plaintiff did not object. The record indicates that the parties then reported to case flow and agreed to continue the hearing to June 16, June 24, and September 1, 2015. The record reveals that the court had a date available prior to June 16, 2015, but the plaintiff or her counsel were unavailable. On June 16, 2015, the plaintiff raised concerns about the length of the hearing, as it became apparent that the hearing would likely conclude on September 1, 2015. On June 24, 2015, the plaintiff asked that the hearing be concluded sooner than September 1, 2015. After this request was denied by the court, she then asked for an extra hour so that the defendant could conclude his case-in-chief, and the plaintiff could move to dismiss on the ground that the defendant had failed to make out a prima facie case. The court denied the plaintiff's request, stating that it would not consider such a motion on the basis of the facts established. On September 1, 2015, the plaintiff, without prior notice to the court or the defendant, moved to terminate the hearing pursuant to Practice Book § 4-5, claiming for the first time that her constitutional right to due process had been violated by continuing the hearing. Following oral argument, the court denied the plaintiff's motion. The plaintiff then objected to proceeding with the hearing, but was forced to proceed by order of the court.

"Our Supreme Court has long held that [a party] may not pursue one course of action at trial for tactical reasons and later on appeal argue that the path he rejected should now be open to him." (Internal quotation marks omitted.) *State* v. *Barber*, 64 Conn. App. 659, 669–70, 781 A.2d 464, cert. denied, 258 Conn. 925, 783 A.2d 1030 (2001). Here, the plaintiff agreed to the dates upon which the hearing was scheduled. Therefore, on the basis of the plaintiff's acts, conduct, and surrounding circumstances, we determine that she impliedly waived her right to object to the length of the hearing.

II

The plaintiff also claims that the court lacked sufficient evidence to support its finding that an immediate and present risk of psychological harm to the child existed, pursuant to § 46b-56f. Specifically, the plaintiff

argues that "psychological harm" under § 46b-56f requires a greater showing than was provided, and that the defendant failed to provide testimony from a mental health expert or disinterested fact witness to establish a risk of psychological harm.[8] We disagree.

"The proper standard of proof in a trial on an order of temporary custody is the normal civil standard of a fair preponderance of the evidence. . . . We note that [a]ppellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . With those principles in mind, we will review the evidence presented at the hearing . . . to determine whether the court's determination is supported by the evidence in the record." (Internal quotation marks omitted.) *In re Paul O.*, 125 Conn. App. 212, 218, 6 A.3d 1209 (2010).

The court was presented with the following relevant evidence. The police interviewed the child at the plaintiff's home following the May 10, 2015 incident. They noted that he was "extremely upset; his face was flushed, his eyes were red, and was crying with tears running down his face." The child repeatedly stated that he wanted to go home. The police provided the child with his *Miranda* rights,[9] and stated that this might have contributed to the child's emotional state. The court, however, found the reading of the child's *Miranda* rights "to be less significant in comparison to the overall events of the day in question." After speaking with the plaintiff, the defendant, the child, and the guardian ad litem, the police concluded that "it would be appropriate and in the child's best interest [for him] to go home with [the defendant] because they did not believe that there would be a civil visitation past that point."

The guardian ad litem testified as a fact witness and in her legal capacity at the June 16 and September 1, 2015 hearings. Specifically, she testified that she overheard a portion of the May 10, 2015 altercation via telephone and that she heard the child say "don't hit me . . . don't touch me . . . don't push me." The guardian ad litem also met with the child a couple of days after the incident. At that meeting, the child was still visibly upset and told the guardian ad litem that the plaintiff had "hit him, pushed him and threw him to the ground" and that "he never wanted to see [her] again." The guardian ad litem spoke with the child's

therapist, who recommended that the child not see the plaintiff "at this time." She also spoke with the child's tutor, who indicated that the child was now very upset, very aggravated, and agitated. The tutor also indicated that the child's ability to stay focused and complete his work had decreased drastically, and he had regressed back to where he was two or three years ago. The defendant and his wife similarly testified that the child's academics had regressed. In addition, the child wet his bed directly following the incident. On the basis of the evidence presented, the court concluded, by both a fair preponderance of the evidence and by clear and convincing evidence, as was set forth in detail in its articulation, filed on May 22, 2017, that there existed an immediate and present risk of psychological harm to the child. Therefore, the court concluded it was in the child's best interest to grant the defendant's application and order that the child's visitation with the plaintiff cease.

We conclude that there was sufficient evidence to support the court's conclusion of an immediate and present risk of psychological harm to the child as a result of the incident on May 10, 2015, at the plaintiff's home. Although § 46b-56f does not contain explicit criteria for the court to consider when analyzing an "immediate and present risk of psychological harm," we cannot conclude that the court's finding was clearly erroneous in light of the evidence presented, which revealed that the child was deeply affected by the May 10, 2015 incident. He was visibly upset immediately following the incident and expressed his desire to never see the plaintiff again. There was evidence of a decline in the child's psychological well-being following the incident, including evidence of his academic and behavioral regression. The evidence is sufficient to support the court's conclusion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes 46b-56f (a) provides: "Any person seeking custody of a minor child pursuant to section 46b-56 or pursuant to an action brought under section 46b-40 may make an application to the Superior Court for an emergency ex parte order of custody when such person believes an immediate and present risk of physical danger or psychological harm to the child exists."

[2] Our review of the record revealed that on January 5, 2017, the court reopened the proceedings and ordered the child to call the plaintiff once a week and permitted the child to call her more often, if the child so desired. By order dated June 21, 2017, this court, sua sponte, ordered the parties to file briefs as to why this matter is not moot. The plaintiff filed a brief arguing that the matter is not moot because there is practical relief that can be granted to her. See, e.g., *In re Jeremy M.*, 100 Conn. App. 436, 445, 918 A.2d 944, cert. denied, 282 Conn. 927, 926 A.2d 666 (2007) (appeal was not moot where "[u]pon reversal of the court's judgment, the respondent would not be a delinquent, and, therefore, the erasure of his records would be automatic and mandatory"); *Williams* v. *Ragaglia*, 64 Conn. App. 171, 175, 779 A.2d 803 (2001), aff'd, 261 Conn. 219, 802 A.2d 778 (2002) (reversing trial court's dismissal of administrative appeal from revocation of foster care license where "practical relief would be the benefit of having a clean record with the department"). Specifically, the plaintiff argued that the May 12, 2015 orders are still in effect to prevent her from having physical contact with

the child. She is only permitted to contact him by a weekly phone call. There is practical relief that could be granted if she prevails on appeal. We agree with the plaintiff, and accordingly, we address the merits of her claims on appeal.

[3] In the present case, the defendant submitted a three page affidavit with his application in which he attested to the facts of the May 10, 2015 incident, the child's emotional state following the incident, and the child's unwillingness to visit with the plaintiff in the future. He further attested that his counsel had spoken with the plaintiff to inform her of the defendant's intention to file the application.

[4] The plaintiff cited several cases as support for her claim that "schedule a hearing" means complete the hearing. The cases cited do not stand for that proposition. *Pendleton* v. *Minichino*, Superior Court, judicial district of Hartford-New Britain, Docket No. 506673 (April 3, 1992) (6 Conn. L. Rptr. 241), upheld the constitutionality of General Statutes § 46b-15, which permits a court to issue an ex parte order temporarily suspending visitation rights until the date of the hearing that must be held no later than fourteen days following the issuance of the order. Id., 247. The language of § 46b-15 is virtually identical to § 46b-56f (c) and the case is not inconsistent with the present matter. *Morera* v. *Thurber*, 162 Conn. App. 261, 131 A.3d 1155 (2016), concerns the construction of the word "shall" with respect to when a hearing must be held; it does not address when the hearing must be completed. In *State* v. *Reddy*, 135 Conn. App. 65, 42 A.3d 406 (2012), this court was asked to determine whether a fourteen day hearing requirement contained in General Statutes § 29-38c (d) was mandatory or subject to waiver.

[5] The parties do not dispute that a protected liberty interest has been implicated. Indeed, a parent has a fundamental liberty interest in the "companionship, care, custody, and management of his or her children . . . ." (Internal quotation marks omitted.) *Fish* v. *Fish*, 285 Conn. 24, 117, 939 A.2d 1040 (2008). Therefore, a parent may not be deprived of his or her fundamental liberty interest without being afforded procedural due process. See generally *Mathews* v. *Eldridge*, 424 U.S. 319, 333–34, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

[6] The record also indicates that the court had a date available in between the May 21, 2015 and June 16, 2015 hearing dates, however, the plaintiff or her attorney indicated she was unavailable.

[7] Specifically, the court stated: "[Y]ou have mounted an extremely, I want to say, protracted litigious presentation that is self-serving, that can only be characterized as evading the factual basis of this case. I have allowed you voluminous latitude and yet you continue, continue to take advantage of the court's opportunity to address the matters in an appropriate fashion."

[8] We are unpersuaded by the plaintiff's claim that there was no testimony from a disinterested fact witness. The record indicates that the plaintiff continually challenged the guardian ad litem's ability to remain independent, impartial, objective, and fair. The court, however, made no such finding.

[9] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).