******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* KENYON JOSEPH
(AC 41379)

Lavine, Devlin and Bear, Js.

*Syllabus*

Convicted of the crime of assault of public safety personnel arising out of
an incident in which the defendant struck a correction officer, the
defendant appealed to this court. During the trial, the defendant asserted
an affirmative defense of mental disease or defect. Both the state and
the defendant offered testimony from expert witnesses who conducted
separate competency evaluations of the defendant. The defendant's
expert witness presented testimony that the defendant lacked the capac-
ity to control his behavior in accordance with the law, while the state's
expert witness testified that the defendant was capable of controlling
his behavior. On appeal, the defendant claimed that the jury's rejection
of the affirmative defense of mental disease or defect was not reasonably
supported by the evidence and that the jury improperly disregarded his
expert witness' conclusion that he lacked the substantial capacity to
conform his conduct within the law. *Held* that the defendant could not
prevail on his claim that the jury's rejection of his affirmative defense
of mental disease or defect was not reasonably supported by the evi-
dence, as the jury was entitled to accept or reject the expert testimony
presented at trial; the defendant's claim that the jury was obligated to
accept his expert witness' testimony and that its failure to do so consti-
tuted reversible error was unavailing because the jury, as the finder of
fact, was the sole arbiter of the credibility of the witnesses, and the
defendant failed to demonstrate any basis on which to overturn the
jury's determination of the credibility of the expert witnesses.

Argued October 7—officially released December 3, 2019

*Procedural History*

Substitute information charging the defendant with
the crime of assault of public safety personnel, brought
to the Superior Court in the judicial district of New
London at Norwich, geographical area number twenty-
one, and tried to the jury before the court, *Jongbloed,
J.*; verdict and judgment of guilty, from which the defen-
dant appealed to this court. *Affirmed.*

*Peter G. Billings*, assigned counsel, for the appel-
lant (defendant).

*Linda F. Currie-Zeffiro*, assistant state's attorney,
with whom, on the brief, were *Michael L. Regan*, state's
attorney, and *Thomas DeLillo*, senior assistant state's
attorney, for the appellee (state).

*Opinion*

DEVLIN, J. The defendant, Kenyon Joseph, appeals from the judgment of conviction, rendered after a jury trial, of assault of a correction officer in violation of General Statutes § 53a-167c (a).[1] On appeal, the defendant asserts that the jury's rejection of his affirmative defense of mental disease or defect was not reasonably supported by the evidence.[2] We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant was serving a fifty-five year sentence after a 2008 conviction of felony murder, murder as an accessory, conspiracy to commit robbery in the first degree, and two counts of assault in the first degree as an accessory. *Joseph* v. *Commissioner of Correction*, 153 Conn. App. 570, 574, 102 A.3d 714 (2014), cert. denied, 315 Conn. 911, 106 A.3d 304 (2015). Following a 2010 incident in which the defendant was beaten by two fellow inmates at Corrigan-Radgowski Correctional Center (Corrigan), he was transferred to MacDougall-Walker Correctional Institution (MacDougall). Two years later, on July 3, 2012, the defendant was scheduled to be transferred back to Corrigan. On that day, the defendant told a correction officer at MacDougall that he did not want to return to Corrigan and, if he were returned, "he was going to assault the officers when he got there." Initially, in response to this statement, the defendant remained at MacDougall; later that month, however, he was transferred to Corrigan.

Upon his return to Corrigan, the defendant was placed on high security status, which entailed greater restrictions on his activity and more frequent searches of his cell. The defendant informed the unit manager of his cell pod that he did not want to be at Corrigan and was displeased about his high security status. The defendant requested a transfer from Corrigan on August 25, 2012, but that request was denied.

On September 10, 2012, while touring the defendant's cell pod, Warden Scott Erfe and Deputy Warden Stephen Bates stopped on the first floor of the cell pod to address the inmates about various issues. A number of inmates, including the defendant, gathered to listen to Erfe speak. While Erfe was speaking, the defendant began to pace and loudly state that he did not want to be at Corrigan, progressively getting louder as he spoke. In response, Erfe ordered the defendant to return to his cell and instructed staff to accompany the defendant. As the staff led the defendant to his cell on the second floor, he continued to shout that he did not want to be at Corrigan. When they reached the defendant's cell, he shouted something that was perceived as a threat and Erfe ordered that the defendant be brought to the restricted housing unit. As the staff led the defendant back toward the stairs, he broke free of their grasp,

climbed over the railing on the second floor, and climbed down to the first floor. After landing on the floor, he approached the officers' station, where Bates and Erfe were standing, and resumed shouting, saying that he would do anything to get out of Corrigan. Bates exited the officers' station and, with the help of Captain Robert Judd, began to lead the defendant away by the shoulder from the officers' station. After taking a few steps, the defendant swung a closed fist at Bates and struck him on the right side of his face. Judd responded by using his chemical agent on the defendant, while Bates tackled the defendant to the floor. As Bates wrestled with the defendant, he noticed that the defendant had a makeshift weapon in his hand, which Bates later learned was a sharpened toothbrush. As this was happening, other correction officers quickly rushed over and subdued the defendant, holding him to the floor. While the defendant was on the floor, one of the correction officers retrieved the makeshift weapon from next to the defendant's head.

Beginning with the defendant's descent from the second floor, the entire incident was recorded by the surveillance system. After the defendant was subdued, his escort to the restricted housing unit was filmed by a handheld camera. Following the assault, Bates' cheek was bleeding and required medical treatment.

The state charged the defendant with assaulting a correction officer in violation of § 53a-167c (a). During the trial, the defendant did not contest the allegation that he assaulted Bates; instead, he raised the affirmative defense of mental disease or defect. In regard to this defense, both the defendant and the state offered testimony from expert witnesses who conducted separate competency evaluations of the defendant. The defendant offered testimony from Andrew Meisler, a psychologist, who concluded that the defendant "lacked the capacity to effectively control his behaviors in accordance with the law" at the time of the assault. In rebuttal, the state offered the testimony of Catherine Lewis, a psychiatrist, who concluded that, at the time of the altercation, the defendant was capable of controlling his behavior and his actions evinced a deliberate intent to assault Bates.

At the conclusion of evidence, the jury found the defendant guilty of assaulting a correction officer in violation of § 53a-167c (a). Thereafter, the defendant filed a motion to set aside the verdict and for a new trial. In support of his motion, consistent with Meisler's testimony, the defendant contended that he had proved, by a preponderance of the evidence, that he lacked substantial capacity to control his conduct within the requirements of the law and, thus, the jury's verdict was against the weight of the evidence. The court denied the motion and, subsequently, sentenced the defendant to ten years of imprisonment to be served consecutively

to the sentence he already was serving. This appeal followed.

On appeal, the defendant claims that the jury's rejection of the affirmative defense of mental disease or defect was not reasonably supported by the evidence. He claims that the jury improperly disregarded his expert witness' conclusion that he lacked the substantial capacity to conform his conduct within the law. We disagree.

"The evaluation of . . . evidence on the issue of legal insanity is [within] the province of the finder of fact . . . . We have repeatedly stated that our review of the conclusions of the trier of fact . . . is limited. . . . This court will construe the evidence in the light most favorable to sustaining the trial court's [judgment] and will affirm the conclusion of the trier of fact if it is reasonably supported by the evidence and the logical inferences drawn therefrom. . . . The probative force of direct and circumstantial evidence is the same. . . . The credibility of expert witnesses and the weight to be given to their testimony and to that of lay witnesses on the issue of sanity is determined by the trier of fact." (Internal quotation marks omitted.) *State* v. *Campbell*, 169 Conn. App. 156, 161, 149 A.3d 1007, cert. denied, 324 Conn. 902, 151 A.3d 1288 (2016).

"Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom. . . . As a practical matter, it is inappropriate to assess credibility without having watched a witness testify, because the demeanor, conduct and other factors are not fully reflected in the cold, printed record. . . . We, therefore, defer to the [trier of fact's] credibility assessments . . . ." (Internal quotation marks omitted.) *State* v. *Smith*, 183 Conn. App. 54, 61, 191 A.3d 1102, cert. denied, 330 Conn. 914, 193 A.3d 50 (2018).

At trial, the jury was confronted with conflicting expert testimony as to the defendant's mental capacity at the time of the incident. On appeal, the defendant challenges the jury's decision to credit Lewis' testimony over the testimony of Meisler. The defendant claims, in essence, that the jury was obligated to accept Meisler's testimony and, because it failed to do so, it was reversible error. We disagree. Our law is well settled that the finder of fact is the sole arbiter of witness credibility. See id. Accordingly, the jury was entitled to accept or reject the expert testimony presented at trial. The defendant has not provided us with any basis on which to overturn the jury's determination of the credibility

of the expert witnesses.

The judgment is affirmed.

In this opinion the other judges concurred.

<sup></sup>

[1] General Statutes § 53a-167c (a) provides in relevant part: "A person is guilty of assault of public safety . . . personnel when, with intent to prevent a reasonably identifiable . . . employee of the Department of Correction . . . from performing his or her duties, and while such . . . employee . . . is acting in the performance of his or her duties . . . (1) such person causes physical injury to such . . . employee . . . ."

[2] The affirmative defense of mental disease or defect is codified under General Statutes § 53a-13 (a), which provides: "In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law."

---