******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* EDWIN NJOKU
(AC 42308)

Lavine, Elgo and Palmer, Js.*

*Syllabus*

Convicted of the crimes of sexual assault in the fourth degree and of tampering with a witness, the defendant appealed to this court, claiming that the trial court improperly denied his motion to modify the terms and conditions of his probation because the conditions were overbroad and not reasonably related to his crimes, did not satisfy the purposes of probation and violated his free speech rights. *Held*:

1. This court declined to review the defendant's claim that the trial court abused its discretion by denying his motion to modify the probationary condition that he not have an authoritative position over females or access to their personal information because no cognizable dispute existed; the court found that the defendant did not demonstrate the deprivation he alleged, and the defendant did not challenge those findings on appeal.

2. This court declined to review the defendant's claim that the trial court abused its discretion by denying his motion to modify the probationary condition barring him from the use of social media of any kind because his objection to the condition was premature and speculative and it lacked a factual basis; the court found that the defendant had not submitted any specific requests to the Office of Adult Probation for an exception to use social media for business related purposes and that that office had expressed a willingness to consider exceptions to the condition if the defendant followed the procedures outlined in the conditions of his probation.

Submitted on briefs October 6, 2020—officially released February 2, 2021

*Procedural History*

Substitute information charging the defendant with the crimes of sexual assault in the first degree, sexual assault in the fourth degree and tampering with a witness, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Vitale, J.*; verdict and judgment of guilty of sexual assault in the fourth degree and tampering with a witness; thereafter, the court denied the defendant's motion to modify the conditions of his probation, and the defendant appealed to this court. *Affirmed*.

*Edwin Njoku*, self-represented, filed a brief as the appellant (defendant).

*Samantha L. Oden*, deputy assistant state's attorney, *Gail P. Hardy*, former state's attorney, and *Vicki Melchiorre*, supervisory assistant state's attorney, filed a brief for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Edwin Njoku, appeals from the judgment of the trial court denying his motion to modify the conditions of his probation under General Statutes § 53a-30 (c). On appeal, the defendant claims that the trial court abused its discretion in refusing to modify his probationary conditions with respect to his job related activity and use of social media. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. In 2013, the defendant, formerly a licensed physician, was found guilty by a jury of fourth degree sexual assault of a patient in his medical office and of tampering with a witness. The court accepted the jury's verdict and imposed a total effective sentence of ten years of imprisonment, execution suspended after five years, with five years of probation consecutive to the ten year term of imprisonment. On December 8, 2017, the defendant was released from prison and began serving his period of probation.

At the time of sentencing, the trial court imposed the following special conditions of probation on the defendant: (1) have no contact by person, phone, mail, or any other means, including social media, directly or indirectly with the victim of his sexual assault and her family, (2) partake in sex offender evaluation as deemed necessary by his probation officer and sex offender treatment provider, (3) obtain approval of all employment from his probation officer and sex offender treatment provider, (4) do not engage in employment that places him in a position of authority over females or grants access to their personal information, (5) abide by sex offender conditions required by law, and (6) do not engage in the practice of medicine during the time his medical license is suspended. The defendant also signed a computer access agreement (agreement) as a condition of his probation. The agreement, in relevant part, required the defendant to refrain entirely from using social media "of any kind."[1] Thereafter, on August 23, 2018, the defendant's probation officer, Kellie DeCapua, imposed an additional condition that he have no contact with former female patients.

On September 4, 2018, the defendant filed a "Motion to Clarify and/or Modify Special Order of Probation,"[2] pursuant to § 53a-30 (c),[3] challenging two of the court imposed conditions of probation, namely (1) the condition that he have no employment in which he has authority over females or have access to their personal information, and (2) the condition that he not access social media of any kind.[4] The court heard arguments on the motion to modify over two days, November 6 and 19, 2018. The court addressed the defendant's claims individually on separate days.

On November 6, 2018, the defendant challenged

DeCapua's construction of the condition that he not be in a position of authority over females or have access to their personal information. The defendant characterized DeCapua's construction of that condition as prohibiting him from (a) acting as a landlord, by barring him from entering into lease agreements with potential tenants, collecting rent from tenants, and performing any maintenance or cleaning, or mowing lawns, on his properties, and (b) engaging in any economic activity of his own, either as part owner or as an investor in a business, given the likelihood that he would be in a position of authority over females as well as males. In his motion, he challenged the propriety of the conditions imposed on him on the grounds that they lacked a nexus to the crimes of which he was convicted, detracted from the state's probation goal of rehabilitation, and were cruel and unusual in violation of the eighth amendment to the United States constitution. He also argued that DeCapua violated his due process rights by consulting the Office of the State's Attorney to clarify whether the business plan he had submitted to her conformed to his probation conditions and then prohibiting him from pursuing that plan without affording him a hearing.

The court rejected the defendant's claims, crediting DeCapua's testimony that she had not banned the defendant from all employment.[5] The court found, rather, that DeCapua had permitted the defendant to proceed with his described business plan as long as he provided the Office of Adult Probation with the required paperwork. The court also found that the defendant had acknowledged that he was required to have a property manager to handle his affairs as a landlord in order that he not come in unpermitted contact with females. The court therefore denied the motion with regard to employment, finding that the defendant agreed that the challenged conditions were proper.

On November 19, 2018, the defendant challenged the condition of probation restricting him from using social media. He argued that that condition was unduly restrictive, and therefore unlawful, because there was no reasonable relationship between the crimes of which he had been convicted, which occurred in a medical office, and the broad prohibition against his use of social media. The defendant argued that a valid condition of probation requires a nexus between the condition and the crime for which it was imposed, because § 53a-30 (a) (17) requires that the condition be reasonably related to his rehabilitation. The defendant further argued that a blanket ban on the use of social media was unconstitutional under *Packingham* v. *North Carolina*,      U.S.     , 137 S. Ct. 1730, 1737, 198 L. Ed. 2d 273 (2017), in which the United States Supreme Court struck down, on first amendment grounds, a statute making it a felony for registered sex offenders to access a wide variety of social media websites.

The court rejected the defendant's argument, citing the wide discretion given to the Office of Adult Probation to impose conditions in the interest of protecting public safety and the fact that the defendant was still serving his sentence. The court further found that the social media sites to which the defendant wants access "are not currently in controversy" because he had either failed to make requests for access to DeCapua, or had failed to demonstrate that he had been prevented from their use. The court also found that, in any event, the conditions of the agreement the defendant signed for his sex offender treatment[6] entirely prohibited the use of social media. In fact, the court found that the defendant had been using social media to contact his former patients while he was on probation. The court denied the defendant's motion to modify on the grounds that the defendant had not presented a controversy that the court could properly resolve at that time, and that, in any case, the defendant's sex offender treatment provider did not permit him to use social media and public safety interests supported the condition. This appeal followed.

The defendant claims on appeal that the trial court's denial of his motion to modify the conditions of his probation was improper, because the conditions were overbroad and lacked a "direct nexus" to the crimes of which he had been convicted, did not satisfy the purposes of probation, and violated his free speech rights. We do not agree.

The standard of review for the denial of a motion to modify probation is well established. "Probation is the product of statute. . . . Statutes authorizing probation, while setting parameters for doing so, have been very often construed to give the court broad discretion in imposing conditions. . . . Section 53a-30 (c) authorizes a court to modify the terms of probation for good cause. . . . It is well settled that the denial of a motion to modify probation will be upheld so long as the trial court did not abuse its discretion. . . . On appeal, a defendant bears a heavy burden because every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . The mere fact that the denial of a motion to modify probation leaves a defendant facing a lengthy probationary period with strict conditions is not an abuse of discretion. Rather, [r]eversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State* v. *Baldwin*, 183 Conn. App. 167, 174–75, 191 A.3d 1096, cert. denied, 330 Conn. 922, 194 A.3d 288 (2018).

Section 53a-30 (a) (17) provides in relevant part: "When imposing sentence of probation . . . the court may, as a condition of the sentence, order that the defendant . . . satisfy any other conditions reasonably

related to the defendant's rehabilitation. . . ." Section 53a-30 (b) additionally "expressly allows the [O]ffice of [A]dult [P]robation to impose reasonable conditions on probation." *State* v. *Thorp*, 57 Conn. App. 112, 116, 747 A.2d 537, cert. denied, 253 Conn. 913, 754 A.2d 162 (2000). "[I]n determining whether a condition of probation [is proper] a reviewing court should evaluate the condition imposed under our Adult Probation Act in the following context: The conditions must be reasonably related to the purposes of the [Adult Probation] Act." (Internal quotation marks omitted.) *State* v. *Crouch*, 105 Conn. App. 693, 698, 939 A.2d 632 (2008).

I

The defendant first claims that the trial court abused its discretion by denying his motion to modify the probationary condition that he not have an authoritative position over females or access to their personal information. He argues that the condition was overbroad and not reasonably related to the crimes of which he was convicted or the purposes probation serves. We decline to review his claim because no cognizable dispute existed for the trial court or this court to address.

The following additional facts are relevant to this issue. At the hearing, the defendant claimed that DeCapua had prohibited him from pursuing a diagnostic testing laboratory business he was planning to start, which he described to the court as compliant with the condition that he not be in a position of authority over females or have access to their personal information. The defendant attested to the court that his business partners would be in charge of all employee related aspects of the business and that he would form a separate limited liability company and focus on marketing. He would be insulated from all employee records and would not be in a supervisory decision-making capacity regarding employees. DeCapua testified that the defendant had never previously proposed an employment solution that conformed to the condition that he not be in a position of authority over female employees. Rather, he had failed to disclose his prospective business partners, had told her that he wished to be "in charge," and had taken the position that he would comply by not hiring women at all, which DeCapua considered untenable in light of federal antidiscrimination law. The court found DeCapua's position to be that she had rejected the defendant's then proposed business plan only because it did not comply with the defendant's conditions of probation at the time he presented it to her. She had never taken the position that the conditions of the defendant's probation prohibited him from starting a business of his own. The Office of Adult Probation was not opposed to the defendant investing in a business as long as (a) his participation in the business complied with the conditions of his probation, and (b) he fully documented his compliance with the conditions of probation for

probation office verification by supplying any relevant paperwork concerning the business's structure, employees, and his role, such as the business's operating agreement. The court credited DeCapua's testimony in making those findings. With respect to the defendant's activity as a landlord, the court found that he had conceded the necessity of having a property manager to collect rents, manage leases, interact with tenants, and maintain apartments in order to comply with the condition of probation limiting his contact with females.[7]

At trial and on appeal, the defendant has mischaracterized the conditions of probation imposed on him. The defendant contended at trial that DeCapua had prohibited him from starting a business. On appeal, he continues to characterize the condition as a complete bar on "start[ing] or invest[ing] in any business." The court expressly credited DeCapua's testimony that she had *not* taken that position and that the Office of Adult Probation would permit the defendant to pursue a business venture, as long as he fully complied with his probationary conditions and provided documentation of how his venture was structured.[8] We defer to the trial court's determination of credibility, and we thus reject the defendant's characterization of the nature and extent of the condition imposed on him by DeCapua. See *State* v. *Joseph*, 194 Conn. App. 684, 689, 222 A.3d 137 (2019) ("It is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom. . . . As a practical matter, it is inappropriate to assess credibility without having watched a witness testify, because the demeanor, conduct and other factors are not fully reflected in the cold, printed record." (Internal quotation marks omitted.)), cert. denied, 334 Conn. 915, 221 A.3d 809 (2020). The court also stated that the defendant was not, in fact, prevented from carrying on his business as a landlord, provided that he utilized a property manager to handle his affairs. Thus, no dispute existed for the court to review given its finding that the defendant had not demonstrated the deprivation he alleged. The defendant has not challenged those findings of the trial court with respect to the condition's application. We thus reject the defendant's characterization of the nature and extent of the condition imposed on him by DeCapua. Because our conclusion on this point resolves the issue presented by the defendant, we need not reach the legal merits of his claim.[9]

II

The defendant next claims that the trial court abused its discretion by denying his motion to modify the conditions of his probation relating to social media. He claims that the condition barring him from the use of social

media was overbroad, was not reasonably related to the crime for which he was convicted, was imposed beyond the power of the probation office, and was unconstitutional. We do not agree.

The following additional facts are relevant to this issue. The court asked the defendant to clearly articulate the scope of his social media access request. The defendant testified that he wanted to use Snapchat to communicate with his mother and Facebook and LinkedIn for advertising and other business related purposes.[10] He stated that, apart from communicating with his mother, his primary purpose in seeking social media access was for business related advertising purposes. He, however, testified that he had discussed Snapchat with DeCapua and she had been "reasonable."[11] The court found that Snapchat was not at issue. The defendant further admitted that he had not made any requests to DeCapua regarding the use of Facebook or LinkedIn for advertising. The court found that the defendant's request to access Facebook and LinkedIn was not an issue for the court because the defendant had not yet raised the question with DeCapua. DeCapua indicated to the court that there may be an avenue for the defendant to make requests regarding advertising. The court concluded that "as it turns out according to probation . . . you would have permission potentially to use social media for business purposes as long as you comply with making a request in writing and setting forth the basis for which you'd be using it for business purposes and the business model for which it would be used through. If that was done, they'd be able to work with you."[12] The court denied the motion with respect to the defendant's social media claims.

Our review of the record in the trial court reveals that the defendant's objection to the probationary condition placed on him is premature, speculative, and lacking a factual basis. The trial court found that the defendant had not submitted any specific requests to the Office of Adult Probation for an exception for him to use social media for business advertising purposes. The court further found that the Office of Adult Probation expressed a willingness to consider accommodating the defendant in that respect. Thus, we conclude that we need not reach the defendant's legal claims, including his first amendment argument.[13]

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The agreement contained nineteen conditions. The final condition, that the defendant refrain from using social media "of any kind," was inserted in handwriting by the probation office as an additional condition under "Other."

[2] We agree with the state that this motion is best characterized as a motion to modify the conditions of probation. "Motions for clarification may not . . . be used to modify or to alter the substantive terms of a prior judgment . . . and we look to the substance of the relief sought by the motion rather than the form to determine whether a motion is properly characterized as

one seeking a clarification or a modification." (Internal quotation marks omitted.) *State* v. *Denya*, 294 Conn. 516, 528–29, 986 A.2d 260 (2010). The defendant challenged the propriety of the conditions of probation, citing § 53a-30 and asserting that the terms of his probation were improperly imposed.

[3] General Statutes § 53a-30 (c) provides: "At any time during the period of probation or conditional discharge, after hearing and for good cause shown, the court may modify or enlarge the conditions, whether originally imposed by the court under this section or otherwise, and may extend the period, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29. The court shall cause a copy of any such order to be delivered to the defendant and to the probation officer, if any."

[4] DeCapua filed a letter with the court in response to the defendant's motion the following day, on September 5, 2018, explaining her enforcement of the conditions of probation at issue and contesting the defendant's characterization of the facts.

[5] At the conclusion of the first day, the court asked the defendant if there was any need for a ruling given that, during the hearing, the defendant had described a probation compliant business plan to the court and had conceded that he needed to have a property manager in order to comply with his probationary terms. The defendant maintained his position that DeCapua had told him he could not "engage in any of these things" or "start a business." The court found DeCapua's testimony credible, and thus determined that the defendant had not demonstrated that the Office of Adult Probation had overreached in any way. See part I of this opinion.

[6] DeCapua testified that the defendant had signed a standard agreement with his sex offender treatment provider, the Connecticut Association for the Treatment of Sex Offenders, which broadly prohibited him from accessing social media, due to general concerns about public safety given the anonymity inherent in social media.

[7] The defendant argued that it was financially burdensome to continue paying his current property manager but acknowledged that he was subject to that requirement.

[8] The defendant claims that the trial court "agreed" with the Office of Adult Probation that the defendant should be barred from owning or investing in any business where he might obtain the personal information of females. To the contrary, the trial court explicitly agreed with DeCapua that the defendant *could* own or invest in a business, provided he was insulated from access to the personal information of females.

[9] We note that the defendant has raised a claim that his due process rights were violated when DeCapua consulted with the Office of the State's Attorney to confirm her interpretation that the defendant's then proposed business plan and landlord activity did not comply with the conditions of his probation. He claims that the Adult Probation Act is a "creation of statute" and the statute "did not explicitly or implicitly authorize [the Office of Adult Probation] to consult the [Office of the State's Attorney], [which] prosecuted the case, to resolve issues of ambiguity . . . . This is to be addressed by the courts, [which] have broad discretion to do so." This claim is meritless. "[I]f an individual on probation believes that the [O]ffice of [A]dult [P]robation imposed an unreasonable condition, he may request a hearing pursuant to . . . § 53a-30 (c)." *State* v. *Smith*, 255 Conn. 830, 840, 769 A.2d 698 (2001). In the present case, the defendant requested and received a hearing before the court.

[10] Facebook and LinkedIn are commonly used social media platforms, the latter of which focuses primarily on networking in the employment sphere. Snapchat is a widely used mobile application that allows users to text and send pictures and videos.

[11] After the defendant testified that he wished to use Snapchat to communicate with his mother, the court asked the defendant, "You told me you mentioned Snapchat, but you worked out some sort of an agreement about the Snapchat with your mother, right?" The defendant responded, "That's correct."

[12] The court did credit DeCapua's testimony and find that the defendant's sex offender treatment agreement with the Connecticut Association for the Treatment of Sex Offenders did not permit him to use social media. The court, however, also credited DeCapua's subsequent testimony concerning the possibility that she would entertain an advertising related request from the defendant. The court found, following her testimony, that the defendant's advertising request could be accommodated provided he submitted a written

request, pursuant to the court's earlier findings made at the November 6, 2018 hearing.

[13] We understand, of course, that any limitation on free expression, including the ability to gather information in the Internet age, must be scrupulously evaluated in light of first amendment concerns. "The forces and directions of the Internet are so new, so protean, and so far reaching that courts must be conscious that what they say today might be obsolete tomorrow." *Packingham* v. *North Carolina*, supra, 137 S. Ct. 1736. But we also agree with Justice Kennedy's observation that "the [f]irst [a]mendment permits [states] to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime . . . ." Id., 1737.

———————————————