******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* SUZANNE P.*
(AC 43859)

Suarez, Clark and DiPentima, Js.

*Syllabus*

Convicted on a plea of guilty of the crime of operating a motor vehicle while under the influence of intoxicating liquor or drugs as a second offender, the defendant appealed to this court following the trial court's denial of her motion to modify a condition of her probation. As part of the plea agreement, the state entered a nolle prosequi as to each of two unrelated charges against the defendant, for breach of the peace in the second degree and criminal trespass in the first degree. The breach of the peace charge arose from an incident between the defendant and her boyfriend, L, and the criminal trespass charge arose from an incident in which the defendant trespassed on the property of her former husband, R, and their two children. As part of the defendant's sentence, the court imposed a special condition of probation, in which it ordered that the defendant have no contact with the "domestic violence complainants." After the commencement of her probationary period, the defendant filed a motion, requesting that the no contact condition be modified to delete the phrase "domestic violence complainants" and to replace it with language that specifically referenced only L and R. After a hearing, the trial court denied the motion and the defendant appealed to this court. *Held*:

1. The trial court's determination that the special condition prohibited the defendant from having any contact with her children was not improper: although the trial court's oral pronouncement that the defendant have no contact with the "domestic violence complainants" was ambiguous, its clarification that the phrase was meant to include the defendant's children was not manifestly unreasonable, because, even though criminal trespass is not a domestic violence crime, it was clear that the court intended the phrase "domestic violence complainants" to include those affected by the defendant's criminal trespass in addition to the victim of the breach of the peace, L, and, although the children were not direct complainants in the criminal trespass charge, the terms "complainant" and "victim" may be used interchangeably in criminal proceedings, the defendant did not challenge the fact that R, who was also the victim of criminal trespass, was included in the no contact order, and, if the trial court had intended the order to apply only to L, it would have used the singular term "complainant" instead of the plural term "complainants"; moreover, the issue of no contact with the children was before the court at the defendant's sentencing hearing, as, during that hearing, R specifically requested that the defendant be prohibited from contacting him and the children and defense counsel argued that, if a no contact order were to be imposed, it should not apply to the children.

2. The trial court did not abuse its discretion in denying the defendant's motion for modification:

   a. The defendant could not prevail on her unpreserved claim that her right to procedural due process was violated because she was not provided with notice and an opportunity to be heard with respect to the no contact condition, the defendant having failed to establish a violation of a constitutional right under *State* v. *Golding* (213 Conn. 233): the trial court was not required to canvass the defendant regarding the special condition of probation under the applicable rule of practice (§ 39-19) because the condition was not a direct consequence of the plea; moreover, at the sentencing hearing, R specifically and repeatedly requested that the defendant have no contact with him and the children and the defendant was provided with a meaningful opportunity to address the issue; furthermore, the defendant did not move to withdraw her plea even though she was aware, prior to the imposition of the sentence, that a special condition of probation prohibiting contact with the children was before the trial court.

   b. The defendant's constitutional right to substantive due process was not violated because the special condition of probation did not violate

her fundamental right to parent her children, as the condition did not reach further than was necessary to protect the children's safety: the no contact condition furthered a valid objective of probation because it sought to protect the safety of the children as members of the public; moreover, under the circumstances of this case, the trial court's taking into consideration the emotional and mental health safety of the defendant's children when fashioning its special conditions of probation was an appropriate extension of *State* v. *Ortiz* (83 Conn. App. 142), in which a no contact order was imposed to protect the physical safety of the defendant's children, as there was ample indication in the record of emotional harm, and the no contact order focused on the emotional well-being of the children.

Argued May 19—officially released November 9, 2021

*Procedural History*

Information charging the defendant with the crime of operating a motor vehicle while under the influence of intoxicating liquor or drugs and with the infraction of failure to display lights while operating a motor vehicle, brought to the Superior Court in the judicial district of Hartford, geographical area number fourteen, where the defendant was presented to the court, *Baio*, *J.*, on a plea of guilty to operating a motor vehicle while under the influence of intoxicating liquor or drugs as a second offender; judgment of guilty in accordance with the plea; thereafter, the state entered a nolle prosequi as to the infraction of failure to display lights; subsequently, the court, *Baio*, *J.*, denied the defendant's motion to modify a special condition of her probation, and the defendant appealed to this court. *Affirmed.*

*Daniel J. Krisch*, assigned counsel, for the appellant (defendant).

*Kevin M. Black*, *Jr.*, former certified legal intern, with whom were *Michele C. Lukban*, senior assistant state's attorney, and, on the brief, *Sharmese A. Walcott*, state's attorney, and *Mark Brodsky*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Suzanne P., appeals from the judgment of the trial court denying her amended motion to modify a special condition of her probation. On appeal, the defendant claims that the court improperly (1) determined that the special condition prohibited her from having any contact with her children, and (2) denied her amended motion for modification despite the fact that the special condition prohibiting contact with her children violates her right to due process. We affirm the judgment of the trial court.

The following facts and procedural history are relevant. On July 6, 2018, the defendant pleaded guilty to operation of a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a as a second offender. As part of the plea agreement, the defendant also admitted to having violated the terms of her probation. Her pleas were part of a global resolution in which the following charges were nolled: breach of the peace in the second degree in violation of General Statutes § 53a-181, criminal trespass in the first degree in violation of General Statutes § 53a-107 and failure to display lights while operating a motor vehicle in violation of General Statutes § 14-96a (a). The breach of the peace charge arose from an incident involving the defendant and her boyfriend, L. The criminal trespass charge involved an incident in which the defendant, after having been warned not to trespass at the residence of her former husband, R, and their two children, left on the front porch of that residence a gift bag containing photographs and a note indicating that she would like to see their children. After canvassing the defendant, the court found that the plea was made knowingly and voluntarily and accepted the plea. The state recommended two years of incarceration, execution suspended after one year, with three years of probation. The state urged the court to order as a special condition of probation that the defendant have no contact with L. The court ordered a presentence investigation report (PSI), continued the matter for sentencing and noted that the defendant had the right to argue for a lesser sentence.

At the August 31, 2018 sentencing hearing, the issue of no contact with the defendant's children was raised. When invited to provide a victim statement to the court, R stated, "[W]ith a long history of [the defendant's] insobriety, my children and I would just like a no contact."[1] The defendant noted her struggles with sobriety and expressed her desire not to force herself on her children. She explained, "Clearly alcohol has destroyed and taken away a lot of good things in my life. . . . I am a chronic relapser . . . . I just can't lose anymore. The worst of all of it is the time with my children." The court noted the defendant's history of unsuccessful attempts at sobriety and the loss of contact with her

children. The court sentenced the defendant to two years of incarceration, execution suspended after one year, and three years of probation. One of the special conditions of probation ordered by the court was that the defendant have "no contact with the domestic violence complainants."[2] The court further stated that, after the defendant had completed four months of probation, she may file a motion to modify and "show that there has been justification to address the issue of no contact . . . ."[3]

Before the defendant began probation, she filed a motion to modify the no contact condition as to L, with whom she planned to reside following her release. At a January 18, 2019 hearing, the court denied the motion and clarified that the no contact order prohibited contact with L and the defendant's family.

The defendant's probationary period began on May 13, 2019. The relevant written special condition of her probation provided that she have "[n]o contact with victim(s)/complainant(s) [L], [R] or [the] victim's/complainant's family." The defendant filed a motion, dated July 29, 2019, for clarification and modification of the no contact special condition, in which she requested the court to clarify that the no contact condition of her probation did not apply to her children. In the motion, the defendant argued that R had prevented her from having visitation with her children as a result of the no contact special condition, despite the fact that, pursuant to a divorce settlement, the defendant and R shared joint legal custody of the children, aged thirteen and sixteen, who reside with R. The court denied the motion without prejudice because R, who had made it "abundantly clear that he did not want contact for himself or his children," was not provided notice of the hearing. The defendant then filed an "amended motion to modify condition of probation," dated November 13, 2019, in which she sought to "modify the 'no contact' condition of [her] probation by specifically deleting the condition of 'no contact with *the domestic violence complainants*' and substitute [it] with 'no contact with [*L*] and the *defendant's ex-husband* [*R*], *with the exception that* [*she*] *be permitted to have communication with* [*R*] *for the specific purposes of discussing the educational, financial, and health related needs of her minor children.*' " (Emphasis in original.) In her motion, the defendant contended that prohibiting her from contacting her children while on probation conflicted with the court's oral pronouncement of her sentence and violated her constitutional right to due process.

At the November 15, 2019 hearing on the defendant's amended motion to modify, defense counsel stated that the defendant is "minimally . . . seeking clarification . . . ." Counsel representing R and his children stated that they did not want contact with the defendant at this time and elaborated that the children "have suffered

deep wounds because of their mother's behavior and . . . they are going through recovery just as their mother is going through recovery . . . ." R requested that the court "uphold the no contact for myself and my children at this time." The court stated that, because the therapist of the older child "is here, essentially, in a representative role for those children, I will allow a brief comment . . . ." The therapist stated that the child was seeking stability and is not interested in having visitation with the defendant and that it was not in the best interest of the child to force her to have contact with the defendant. The court stated that "there's a family court matter going on. Clearly there are going to be issues happening over there. . . . If the parties come back and say that there's no opposition to modification, the court will hear the motion." The court concluded that the no contact special condition pertained to the children and noted that, "[i]f we were here today with the domestic violence victim and/or counsel on their behalf saying that there was no opposition and that they wanted contact, the court's order would be very different." At the conclusion of the hearing, the court denied the motion. This appeal followed.

On November 19, 2020, the court issued an articulation of its denial of the defendant's amended motion to modify in response to a motion for articulation filed by the defendant.[4] Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly determined that the special condition prohibited her from having any contact with her children. She argues that the court's oral pronouncement, made at the time of sentencing, that she have "no contact with the domestic violence complainants," is unambiguous and conflicts with the written memorialization of that special condition, which provides that the defendant have "[n]o contact with victim(s)/complainant(s) [L], [R] or [the] victim's/complainant's family." We are not persuaded that the court's determination was improper.

We note, preliminarily, that the court's oral pronouncement of the special condition controls and not the written memorialization of the oral pronouncement. "[B]ecause the sentence in a criminal case generally is imposed orally in open court . . . the written order or judgment memorializing that sentence, including any portion pertaining to probation, must conform to the court's oral pronouncement." (Citation omitted.) *State* v. *Denya*, 294 Conn. 516, 529, 986 A.2d 260 (2010). "Consequently, as a general matter, any discrepancy between the oral pronouncement of sentence and the written order or judgment will be resolved in favor of the court's oral pronouncement." Id., 531.

Whether the defendant's criminal trespass is an act

of family violence under General Statutes § 46b-38a is not the issue presented to us in this appeal. The court apparently considered the trespass to be a domestic violence crime, but the issue in this appeal is whether the court used the term "domestic violence complainants" to include the children.[5] The court's use of the plural term "complainants" indicates that it intended to include more persons than L in the order. It, however, is ambiguous as to whether the term "complainants" includes, in addition to L, only R or R and the children. In light of this ambiguity, we next consider whether the court properly determined that the no contact condition applied to the defendant's children.

"In order to determine whether the trial court properly clarified ambiguity in the judgment or impermissibly modified or altered the substantive terms of the judgment, we must first construe the trial court's judgment. It is well established that the construction of a judgment presents a question of law over which we exercise plenary review. . . . In construing a trial court's judgment, [t]he determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole. . . . In addition . . . because the trial judge who issues the order that is the subject of subsequent clarification is familiar with the entire record and, of course, with the order itself, that judge is in the best position to clarify any ambiguity in the order. For that reason, substantial deference is accorded to a court's interpretation of its own order. . . . Accordingly, we will not disturb a trial court's clarification of an ambiguity in its own order unless the court's interpretation of that order is manifestly unreasonable." (Citations omitted; internal quotation marks omitted.) *Bauer* v. *Bauer*, 308 Conn. 124, 131–32, 60 A.3d 950 (2013).

"[T]he purpose of a clarification is to take a prior statement, decision or order and make it easier to understand. Motions for clarification, therefore, may be appropriate where there is an ambiguous term in a judgment or decision . . . but, not where the movant's request would cause a substantive change in the existing decision." (Internal quotation marks omitted.) *Light* v. *Grimes*, 136 Conn. App. 161, 169, 43 A.3d 808, cert. denied, 305 Conn. 926, 47 A.3d 885 (2012).

At the November 15, 2019 hearing on the defendant's amended motion to modify, the court clarified that "the transcript was clear, that the hearing was clear, and that the sentence was clear that the no contact [condition] with the domestic violence victims and conditions imposed included no contact with the children." In its

articulation of the denial of the defendant's amended motion to modify, the court stated: "At the time of sentencing, the defendant's ex-husband, [R], expressed . . . that he and his children wanted no contact with the defendant . . . and not[ed] that they can no longer handle the defendant's ongoing alcohol abuse. The defendant herself acknowledged her issues and that she would not force herself on her children. The court considered the effect on those closest to the defendant of her history of alcohol abuse and noncompliance with court orders."

The defendant disagrees with the court's clarification that the defendant's children are included within the phrase "domestic violence complainants." She argues that R was the sole complainant in the criminal trespass case and, furthermore, that criminal trespass is not a domestic violence crime. In criminal proceedings, "complainant" is often used in place of "victim." See, e.g., *State* v. *Warholic*, 278 Conn. 354, 369–70 and n.7, 897 A.2d 569 (2006). The interchangeable use of these terms does not render the court's clarification manifestly unreasonable simply because the children did not directly complain of the criminal trespass but did so indirectly through R. We are also not persuaded by the defendant's argument that the children are not included as "domestic violence complainants" because criminal trespass is not a domestic violence crime. If so, then R would be eliminated from the no contact order, and the defendant does not challenge on appeal that the special condition applied to R. It is clear that the court intended the phrase "domestic violence complainants" to include those affected by the criminal trespass in addition to the victim/complainant of the breach of the peace, L. Finally, had the court intended the phrase to apply to L only, then it would have used the singular rather than the plural form of "complainants."[6]

Moreover, the issue of no contact with the children was before the court at the sentencing hearing. Although the state's recommendation at the sentencing hearing that the defendant have no contact with the "domestic violence victims" was unclear, the state, after making that recommendation, directed the court's attention to R, who had requested to be heard. R, who was a direct victim of the criminal trespass charge, stated that "my family and I are done with her not being sober," and requested "no contact with myself and my children and no drive-bys by my house and my street. . . . [M]y children and I are done looking behind our shoulder." Although the driving while intoxicated charge to which the defendant pleaded guilty did not involve the children, the criminal trespass charge, which involved the children, was part of the global plea agreement. Further demonstrating that the issue was before the court at the sentencing hearing, defense counsel argued that the no contact order should not apply to the children.

In light of the issues raised at the sentencing hearing, we conclude that the court's November 15, 2019 clarification that the phrase "domestic violence complainants" includes the defendant's children is not manifestly unreasonable.[7] See *Bauer* v. *Bauer*, supra, 308 Conn. 131–32 (" 'we will not disturb a trial court's clarification of an ambiguity . . . unless the court's interpretation . . . is manifestly unreasonable' "). Accordingly, we defer to the court's clarification of the no contact special condition of the defendant's probation.

## II

The defendant next claims that the court improperly denied her amended motion to modify because the special condition prohibiting contact with her children violates her rights to (1) procedural due process and (2) substantive due process. We address each claim in turn.

We first set forth the following general principles. "Probation is the product of statute. . . . Statutes authorizing probation, while setting parameters for doing so, have been very often construed to give the court broad discretion in imposing conditions. . . . [General Statutes §] 53a-30 (c) authorizes a court to modify the terms of probation for good cause. . . . It is well settled that the denial of a motion to modify probation will be upheld so long as the trial court did not abuse its discretion. . . . On appeal, a defendant bears a heavy burden because every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . The mere fact that the denial of a motion to modify probation leaves a defendant facing . . . strict conditions is not an abuse of discretion. Rather, [r]eversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State* v. *Baldwin*, 183 Conn. App. 167, 174–75, 191 A.3d 1096, cert. denied, 330 Conn. 922, 194 A.3d 288 (2018). Section 53a-30 (c) provides in relevant part that, "[a]t any time during the period of probation or conditional discharge, after hearing and for good cause shown, the court may modify or enlarge the conditions, whether originally imposed by the court under this section or otherwise . . . ."

## A

The defendant argues that she "did not have notice that the [special no contact] condition would bar her from contacting her children for three years." She contends that the court failed to canvass her as to the no contact special condition of her probation prior to accepting her guilty plea.[8] The defendant did not raise these specific arguments in her amended motion to modify or at argument on that motion and seeks review to prevail pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 120 A.3d 1188 (2015). Under *Golding*, "a

defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 239–40, as modified by *In re Yasiel R.*, supra, 781. The record is adequate for review and the claim, which alleges a violation of a fundamental right, namely, the right to family integrity, is of constitutional magnitude. See *State* v. *Ortiz*, 83 Conn. App. 142, 162–63, 848 A.2d 1246, cert. denied, 270 Conn. 915, 853 A.2d 530 (2004). Accordingly, we review the claim under the third prong of *Golding* to determine whether the alleged constitutional violation exists.[9]

There is no requirement that a trial court canvass a defendant regarding the consequences of her plea that are not direct consequences, which include the items listed in Practice Book § 39-19.[10] See *State* v. *Faraday*, 268 Conn. 174, 201–202, 842 A.2d 567 (2004) (Practice Book § 39-19 defines scope of constitutional mandate that defendant be advised of all direct consequences of plea). The no contact special condition of probation, which is not listed in § 39-19, is not a direct consequence of the plea. In the unusual circumstances of the present case, however, another set of procedural safeguards is implicated. "[A] parent has a fundamental liberty interest in the companionship, care, custody, and management of his or her children . . . . Therefore, a parent may not be deprived of his or her fundamental liberty interest without being afforded procedural due process. See generally *Mathews* v. *Eldridge*, 424 U.S. 319, 333–34, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)." (Citation omitted; internal quotation marks omitted.) *Garvey* v. *Valencis*, 177 Conn. App. 578, 593 n.5, 173 A.3d 51 (2017). "[F]or more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. . . . It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner." (Internal quotation marks omitted.) *Merkel* v. *Hill*, 189 Conn. App. 779, 786, 207 A.3d 1115 (2019). "The due process clause demands that an individual be afforded adequate notice and a reasonable opportunity to be heard when the government deprives her of a protected liberty interest. . . . [D]ue process is flexible and calls for such procedural protections as the particular situation demands." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Garvey* v. *Valencis*, supra,

593.

The transcript of the sentencing hearing indicates that the defendant had notice that the issue of no contact with her children was before the court and had an opportunity to be heard. To provide context to the court's oral ruling, we note that, at the plea hearing, the court had informed the defendant that "we'll delay the sentencing subject to coming back here to see what the PSI demonstrates and hear[ing] arguments on sentencing." One such argument at the sentencing hearing was made by R, a victim of the criminal trespass charge. Practice Book § 43-10 (2) provides that "[t]he judicial authority shall allow the victim and any other person directly harmed by the commission of the crime a reasonable opportunity to make, orally or in writing, a statement with regard to the sentence to be imposed." In his statement regarding the sentence to be imposed, R specifically and repeatedly requested that the defendant have no contact with him and the children.

After R made these requests at the sentencing hearing, the defendant was provided with a meaningful opportunity to address the issue. The defendant addressed the issue of contact with her children and stated that she realizes that her daughter "is very upset about this and I'm not going to push myself on them . . . ." Defense counsel was provided the opportunity to discuss the no contact condition prior to sentencing. He stated that the defendant wants to "live a healthy lifestyle . . . free from drinking where she can serve as a proper parent to her children," and "resume . . . healthy relationships with her family . . . ." He specifically requested that "the court impose a no contact order except as to the children through a third, mutually agreed party for obvious reasons that relate to my client's sincere desire that as soon as she is alcohol free, she has some chance of resuming a proper relationship with her children."

Accordingly, the defendant was aware prior to the imposition of the sentence that the possibility of a special condition of probation prohibiting contact with her children was before the court, and defense counsel had a meaningful opportunity to argue that the no contact special condition should not include the defendant's children. Despite this opportunity, the defendant did not move to withdraw her plea or otherwise challenge the validity of her plea. For the foregoing reasons, we conclude that the defendant's right to notice and an opportunity to be heard was not violated. As a result, the defendant's claim fails under the third prong of *Golding* because the defendant failed to establish a violation of a constitutional right.

B

The defendant next argues that her right to substantive due process was violated when the court denied

her amended motion to modify because the no contact special condition prohibiting her "from contacting her children for three years violates her 'fundamental liberty interest' as a parent."[11] We are not persuaded.

"The standard of review for the denial of a motion to modify probation is well established. . . . Section 53a-30 (c) authorizes a court to modify the terms of probation for good cause. . . . It is well settled that the denial of a motion to modify probation will be upheld so long as the trial court did not abuse its discretion. . . . On appeal, a defendant bears a heavy burden because every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . The mere fact that the denial of a motion to modify probation leaves a defendant facing a lengthy probationary period with strict conditions is not an abuse of discretion. Rather, [r]eversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Njoku*, 202 Conn. App. 491, 496–97, 246 A.3d 33 (2021). "In view of the nature and goals of probation, however, and because any number of probationary conditions or combinations thereof are likely to be suitable in any particular case, the trial court has an exceptional degree of flexibility in determining [the] terms [of probation] . . . and we therefore review those terms for abuse of discretion only." (Citation omitted; internal quotation marks omitted.) *State* v. *Imperiale*, 337 Conn. 694, 707, 255 A.3d 825 (2021).

"When sentencing a defendant to probation, a trial court has broad discretion to impose conditions. . . . Nevertheless, this discretion is not unlimited, as statutory and constitutional constraints must be observed." (Citations omitted; footnote omitted.) *State* v. *Graham*, 33 Conn. App. 432, 447, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994). "[I]n determining whether a condition of probation impinges unduly [on] a constitutional right [in any particular case], a reviewing court should evaluate the condition to ensure that it is reasonably related to the purposes of [probation]. . . . Consideration of three factors is required to determine whether [such] a reasonable relationship exists: (1) the purposes sought to be served by [the] probation[ary] [condition]; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement." (Citation omitted; internal quotation marks omitted.) *State* v. *Imperiale*, supra, 337 Conn. 708; see also *State* v. *Smith*, 207 Conn. 152, 167–73, 540 A.2d 679 (1988) (court did not abuse its discretion in modifying terms of probation under § 53a-30 to include urinalysis testing, which defendant claimed was unreasonable search and seizure in violation of his fourth and fourteenth amendment rights under federal constitution).

One valid objective of probation is " 'to preserve the public's safety.' " *State* v. *Ortiz*, supra, 83 Conn. App. 164. We conclude that the no contact condition of the defendant's probation furthers that objective because it protects her children as members of the public. See id., 166 (protecting defendant's children as members of public serves goal of probation). In the present case, the court stated in its articulation that "the condition of no contact was warranted and proper based on the danger the defendant posed to those close to her as a consequence of her criminal history, multiple convictions for operating under the influence, her long-standing substance abuse and history of noncompliance with conditions of probation, including those related to substance abuse treatment."

Although no evidentiary hearing was conducted regarding the effect of the defendant's attempt to contact the children by leaving a gift and note on R's front porch after having been warned not to trespass, there were detailed comments from R regarding the effect that the defendant's history of insobriety and prior unwanted attempts at contact had on the children. "[D]ue process does not require that information considered by the trial judge prior to sentencing meet the same high procedural standard as evidence introduced at trial. Rather, judges may consider a wide variety of information. . . . [T]he trial court may consider responsible unsworn or out-of-court information relative to the circumstances of the crime and to the convicted person's life and circumstance. . . . It is a fundamental sentencing principle that a sentencing judge may appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come." (Internal quotation marks omitted.) *State* v. *Ortiz*, supra, 83 Conn. App. 165.

The defendant claims that the condition unconstitutionally infringes on her right to parent her children. The condition of probation restricts parental rights and, thus, interferes with the exercise of a fundamental constitutional right. Therefore, we apply an additional layer of scrutiny to this restriction. "[C]hoices about marriage, family life, and the upbringing of children are among associational rights [the United States Supreme Court] has ranked as of basic importance in our society . . . rights sheltered by the [f]ourteenth [a]mendment against the [s]tate's unwarranted usurpation, disregard, or disrespect. . . . A prohibition on contact with one's children affects the defendant's associational rights." (Citation omitted; internal quotation marks omitted.) Id., 165–66. Even when a court is warranted in severely restricting the defendant's contact with her children in furtherance of the goal of probation to protect them as members of the public, "that restriction should not reach further than is reasonably necessary for the pres-

ervation of the children's safety." Id., 166.

In *Ortiz*, the defendant was convicted, inter alia, of kidnapping and assaulting the victim, with whom the defendant had three children. Id., 144–45. At the sentencing hearing, the prosecutor told the court that the victim had provided detailed accounts of the defendant's abuse of the children, including an incident in which he put a sock and tape over the mouth of his one year old child to stop the baby from crying and another occasion on which he allegedly shook another baby, which resulted in brain damage. Id., 164–65. The defendant received a total effective sentence of thirty years of incarceration, execution suspended after twenty years, and five years of probation with one of the conditions of probation being that he have no contact with his three children until they reach eighteen years of age. Id., 144, 161. The defendant claimed on appeal that the condition of no contact with his children was illegal. Id., 161. This court concluded that, "[i]n light of the information the court had before it at sentencing, the court was warranted in its concern of not just protecting the victim, but also her offspring. However, the defendant also attacks the breadth of the order, which proscribes *all* contact with his children. . . . A strict application of the court's order appears to prohibit the defendant from sending even a birthday card to his children. Yet, it is difficult to imagine how such mail contact could jeopardize their safety. We conclude that a blanket prohibition of all such contact with the children is violative of the defendant's constitutional rights." (Citation omitted; emphasis in original.) Id., 165–66. Accordingly, this court reversed the order only insofar as the no contact provision prohibited mail contact. Id., 166.

In the present case, the defendant argues that there was no indication that her misconduct had harmed her children. She contends that her children were not in the car with her when she was driving under the influence and that the criminal trespass charge simply involves her having left a gift bag on R's porch. The charges and the harm stemmed from the defendant's actions in leaving a note for the children on R's porch, after having been warned not to trespass. *Ortiz* requires that a condition prohibiting contact with a defendant's children be reasonably necessary for the preservation of the children's "safety" but does not indicate whether that is restricted only to physical safety. Id.

We are persuaded that the trial court's taking into consideration the emotional and mental health safety of the children when fashioning its special conditions of probation is, under the circumstances of the present case, an appropriate extension of *Ortiz*. In the present case, it is undisputed that the defendant's criminal conduct, which victimized her children, arose out of and was intertwined with her alcohol abuse. It was reason-

able for the court, in imposing its special conditions of probation, to take measures to protect the children from the defendant's intoxicated behavior. Moreover, it was reasonable for the court to infer that intoxicated behavior could cause emotional injury to the children even if did not occur in the children's presence. The notion that the defendant be able to resume contact with her children once she is capable of having a healthy relationship with her family was raised by the defendant herself as well as by her counsel at the sentencing hearing. The defendant, appearing to recognize the harm caused to her children, stated that she was "sick of disappointing everybody including myself," and that she did not want to "push" herself on her children or "bombard" them. Her counsel, also appearing to recognize the role that alcohol abuse had played in damaging the emotional bond between the defendant and her children, stated that it is "my client's sincere desire that as soon as she is alcohol free, she has some chance of resuming a proper relationship with her children." The court crafted a special condition of probation that took into account the defendant's desire not to "bombard" the children and to have the chance to resume a healthy relationship with her children.

Moreover, there is ample indication in the record of emotional harm. At the sentencing hearing, R stated that he and the children are "done" with the defendant "not being sober . . . ." At the hearing on the defendant's amended motion to modify, counsel for R and the children stated that the children had suffered "deep wounds" and are "going through recovery . . . ." R further explained at that hearing that the last visit the children had with the defendant was in December, 2014, that the children did not want contact with the defendant and that they "feel [as] though . . . they can't really go to places such as the mall or to the center with their friends because they don't want to be looking behind their shoulder." In its articulation, the court noted that R had expressed both directly and through a letter that the children "can no longer handle the defendant's ongoing alcohol abuse." The therapist of the older child stated that "this is an ongoing issue . . . [the child] is at this point not interested in having visitation." These circumstances are significantly distinguishable from the circumstances of *Ortiz*. In *Ortiz*, the condition prohibiting all contact with the defendant's children until they reach the age of eighteen violated his constitutional rights because there was no information before the court that mail contact would jeopardize the safety of the children. *State* v. *Ortiz*, supra, 83 Conn. App. 166. In the present case, based on the information before the court, the no contact order reasonably focused on the emotional well-being of the children. Because the special condition does not reach further than reasonably necessary to protect the children's safety; see id., 163–66; the defendant's constitutional

right to parent was not violated. Accordingly, we conclude that the court did not abuse its discretion in denying the motion for modification.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of domestic violence, we decline to identify the defendant, the victims, or others through whom the victims' identity may be ascertained. See General Statutes § 54-86e.

[1] L requested that the protective order be removed, which request the state opposed.

[2] Special conditions of probation are conditions aside from the standard conditions of probation that apply to all probationers. See, e.g., *State* v. *Johnson*, 75 Conn. App. 643, 646 n.3, 817 A.2d 708 (2003).

[3] Although the court expressly stated at the sentencing proceeding that the defendant could move to modify the special condition upon a showing of a justification for doing so, the defendant's amended motion to modify alleged no such justification.

[4] The defendant filed a motion for articulation on July 17, 2020, seeking an articulation from the trial court of its reasons for denying her amended motion to modify. Following the court's denial of the motion for articulation, the defendant filed in this court a motion for review of the denial of her motion for articulation. This court granted the defendant's motion for review but denied the relief requested therein and further ordered, sua sponte, that the court "articulate whether it considered the defendant's claim, raised in her November 13, 2019 'amended motion to modify condition of probation' that the no contact order with her children resulted in the termination of her parental rights for three years without due process, in violation of both the Connecticut and United States constitutions, and, if so, to state the factual and legal basis for its decision concerning this claim." In its articulation, the court explained the basis for its imposition of a no contact order as to the children, which included the defendant's multiple violations of protective orders, failure to comply with probation requirements and the protection of those closest to the defendant.

[5] At the August 21, 2019 hearing on the defendant's July 29, 2019 motion for clarification and modification, the court stated that the fact that the criminal trespass charge involving R was part of a global agreement in which that charge was nolled "doesn't diminish [R's] right to be considered as a domestic violence victim."

[6] Moreover, at the August 21, 2019 hearing on the defendant's July 29, 2019 motion for clarification and modification, the court referred to R as a domestic violence victim and stated that "it was expressly noted on the record and the state's attorney noted the docket number in which [R] was a domestic violence victim," which was the docket number for the criminal trespass charge.

[7] We reject the defendant's alternative argument that "the court's refusal to modify the written conditions of probation to conform to its actual sentence is plain error." The defendant cannot prevail under this doctrine unless she "demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Jackson*, 178 Conn. App. 16, 20, 173 A.3d 974 (2017), cert. denied, 327 Conn. 998, 176 A.3d 557 (2018). Because we conclude that the court's clarification was not manifestly unreasonable, the defendant has not demonstrated any error, much less plain error.

[8] The defendant also argues that she "lacked fair warning that the state could revoke her probation for noncriminal activity." See, e.g., *State* v. *Boseman*, 87 Conn. App. 9, 17, 863 A.2d 704 (2004) ("Where noncriminal activity forms the basis for the revocation of probation, due process requires specific knowledge that the behavior involved is proscribed. [W]here the proscribed acts are not criminal, due process mandates that the [probationer] cannot be subject[ed] to a forfeiture of his liberty for those acts unless he is given prior fair warning." (Internal quotation marks omitted.)), cert. denied, 272 Conn. 923, 867 A.2d 838 (2005). Because the defendant's probation has not been revoked, the requirement of fair warning of the conditions of probation prior to a revocation of probation has no application here.

[9] There has been no challenge on appeal to the trial court's jurisdiction to entertain the procedural due process claim raised by the defendant. We,

however, note that "once a defendant's sentence is executed, the trial court lacks jurisdiction to entertain any claims regarding the validity of that plea in the absence of a statute or rule of practice to the contrary." (Internal quotation marks omitted.) *State* v. *Monge*, 165 Conn. App. 36, 42, 138 A.3d 450, cert. denied, 321 Conn. 924, 138 A.3d 284 (2016). Section 53a-30 (c), which grants a trial court postsentencing jurisdiction to modify or enlarge conditions of probation for "good cause," is one such exception. We further note that the trial court, which has broad discretion in administering probation, would have jurisdiction to consider the defendant's unpreserved due process claim, and, therefore, we consider the claim. See *State* v. *Obas*, 320 Conn. 426, 431, 440–48, 130 A.3d 252 (2016) (reviewing state's claim that defendant was precluded from seeking exemption from sex offender registration, which he had raised in motion to modify probation, because he had entered into plea agreement with state); *State* v. *Crouch*, 105 Conn. App. 693, 694, 939 A.2d 632 (2008) (reviewing claim that trial court improperly added condition of probation in violation of terms of plea agreement and in violation of defendant's constitutional right to due process); *State* v. *Thorp*, 57 Conn. App. 112, 114, 747 A.2d 537 (reviewing claim that trial court improperly imposed more restrictive conditions of probation without permitting defendant to withdraw guilty plea when it granted state's § 53a-30 (c) motion to modify), cert. denied, 253 Conn. 913, 754 A.2d 162 (2000).

[10] Practice Book § 39-19 provides: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands: (1) The nature of the charge to which the plea is offered; (2) The mandatory minimum sentence, if any; (3) The fact that the statute for the particular offense does not permit the sentence to be suspended; (4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and (5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

[11] This substantive due process claim concerns the ongoing conditions of supervision of the defendant while she is on probation. The trial court has jurisdiction to entertain such a claim in the context of a motion for modification pursuant to § 53a-30 (c), which encompasses the ongoing supervision of the probationer. See *State* v. *Smith*, 207 Conn. 152, 170, 540 A.2d 679 (1988).