******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LAURA KING ET AL. *v.* MATTHEW HUBBARD
## (AC 44600)

Moll, Suarez and Seeley, Js.

*Syllabus*

Pursuant to statute (§ 52-196a), in a civil action in which a party files a complaint against an opposing party that is based on the opposing party's exercise of its right of free speech in connection with a matter of public concern, the opposing party may file a special motion to dismiss the complaint, and, if the trial court grants the motion to dismiss, the opposing party is entitled to costs and reasonable attorney's fees. The plaintiffs, L and R, sought the issuance of an injunction against the defendant, restraining him from making or publishing any statements about either plaintiff, or about a nonprofit charitable foundation for which L served as a consultant, or about a private club where R worked as an executive chef. The plaintiffs alleged that comments made by the defendant in a post on the private club's Facebook page regarding a fundraising event to be held at the club for the foundation constituted defamation and an invasion of privacy. The defendant was a cofounder of the foundation and a former member of its board of directors. The defendant filed a special motion to dismiss the complaint in its entirety pursuant to § 52-196a, claiming that each count in the complaint was based on his exercise of his right of free speech in connection with a matter of public concern and that he should be awarded costs and reasonable attorney's fees. Prior to the deadline for filing opposition filings, the plaintiffs voluntarily withdrew the action. Thereafter, the defendant filed a motion to restore the case to the docket, arguing that, pursuant to statute (§ 52-80), the plaintiffs were required to obtain permission of the court to withdraw the action after establishing cause. The plaintiffs objected, asserting, inter alia, that they had a unilateral right to withdraw their action pursuant to § 52-80, as a hearing on the merits or a hearing on an issue of fact had not commenced. The trial court denied the defendant's motion to restore, finding that, at the time the plaintiffs withdrew their action, the plaintiffs' time frame for responding to the special motion to dismiss had not passed and no consideration of the special motion to dismiss or its accompanying affidavit by the presiding authority had begun. The court further declined to exercise its discretion to restore the action to the active docket. On the defendant's appeal to this court, *held*:

1. The defendant could not prevail on his claim that the trial court abused its discretion when it denied his motion to restore the action to the active docket:

a. The defendant's claim that the plaintiffs' right to withdraw their action unilaterally ceased when he filed the motion to dismiss with an accompanying affidavit was unavailing as the court did not have an opportunity to initiate a formal proceeding in which it would make a substantive determination concerning the legal or factual issues presented in the special motion to dismiss and, accordingly, the plaintiffs were within their rights to unilaterally withdraw the action pursuant to § 52-80.

b. Contrary to the defendant's claim, by filing a special motion to dismiss pursuant to § 52-196a, he did not acquire a vested right to have the court consider that motion and his request for attorney's fees, this court, giving effect to both §§ 52-196a and 52-80, as required by statute (§ 1-2z), concluded that the right to a hearing on a defendant's special motion to dismiss is subject to a plaintiff's absolute right to withdraw an action at any time prior to a hearing, and, interpreting § 52-196a in this manner, consistent with its plain meaning and its relationship to § 52-80, did not yield an absurd or unworkable result; moreover, to the extent that the defendant urged this court to consider the legislative intent underlying § 52-196a and to construe the statute such that a right to have the court consider the merits of a special motion to dismiss is not subject to a plaintiff's unilateral right to withdraw prior to a hearing, such a method of statutory analysis runs afoul of § 1-2z, the interpretation suggested by the defendant would require this court to insert an exception into § 52-80 that is not expressly stated therein, such an exception would

contravene the broad right to unilaterally withdraw an action that is conferred by § 52-80 that applies, by the statute's plain terms, to any action returned to court and entered in the docket, and the plain language of § 52-196a requires the court to grant the moving party attorney's fees only if the court considers the merits of the special motion to dismiss and the motion itself is granted.

c. The trial court correctly concluded that the plaintiff's action was not the type of action that § 52-196a was enacted to address, as the plaintiffs did not constitute a powerful private interest, nor were they seeking to discourage the defendant from petitioning the government, and, even assuming, arguendo, that the defendant's Facebook post related to a matter of public concern, the action reasonably was best characterized as a dispute between private individuals rather than an attempt to intimidate the defendant for strategic purposes related to the activities of the foundation; moreover, the defendant's characterization of the trial court's reasoning was belied by that court's admonition that its ruling should not be interpreted to suggest that citizens do not have the right to challenge the propriety of charitable fundraising practices.

2. This court declined the defendant's request to fashion a procedural mechanism to guide trial courts in the event that an issue similar to the issue raised in this appeal arises again and to establish a rebuttable presumption that a withdrawal filed in response to a special motion to dismiss pursuant to § 52-196a was filed to avoid an adverse ruling because, as our established case law recognizes, the issue of whether to restore a case to the active docket is best entrusted to the sound discretion of the trial court and evaluated on a case-by-case basis.

Argued May 17, 2022—officially released January 10, 2023

*Procedural History*

Action seeking, inter alia, a permanent injunction barring the defendant from making or publishing certain statements, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the defendant filed a special motion to dismiss; thereafter, the plaintiffs withdrew their action; subsequently, the court, *Genuario, J.*, denied the defendant's motion to restore the case to the docket and rendered judgment thereon, from which the defendant appealed to this court. *Affirmed.*

*Anthony R. Minchella*, for the appellant (defendant).

*Anthony J. Febles*, for the appellees (plaintiffs).

*Opinion*

SUAREZ, J. The defendant, Matthew Hubbard, appeals from the judgment of the trial court denying his motion to restore to the active docket a civil action that was brought against him by the plaintiffs, Laura King and Richard King, and later voluntarily withdrawn. The defendant claims that (1) the court abused its discretion when it denied his motion to restore the action to the active docket and (2) this court should fashion a procedural mechanism to guide trial courts when a plaintiff withdraws an action in response to a special motion to dismiss pursuant to General Statutes § 52-196a, which affords protection against so-called SLAPP lawsuits.[1] We affirm the judgment of the court.

The following procedural history is relevant to the claims raised on appeal. On July 9, 2020, the plaintiffs filed an application for an ex parte temporary injunction and an order to show cause together with a verified complaint. The verified complaint alleged the following facts. The Catherine V. Hubbard Foundation (CVHF) is a nonprofit charitable foundation dedicated to the memory of the defendant's daughter, a child victim of the Sandy Hook mass school shooting. Laura King is a consultant to CVHF. The Stanwich Club, a nonparty private social organization, employed Richard King as its executive chef. "On June 27, 2020, the defendant published a publicly viewable statement on the Stanwich Club's Facebook page commenting on a CVHF benefit golf tournament that the Stanwich Club [would] be hosting on July 16, 2020." In commenting negatively on the event, the defendant posted as follows: "To make this [CVHF event] even more corrupt, Richard King who is the chef and [whose] wife [works] for the foundation gets paid [$75,000] a year . . . the highest paid consultant for the foundation. Shame on the club and shame on [CVHF] [a]gain for not being transparent. . . ."

In count one of the verified complaint, the plaintiffs alleged that "[b]y publicly and falsely describing this event as 'corrupt,' chastising the Stanwich Club for hosting the event, and wrongfully associating the plaintiff Richard King and his wife, the plaintiff Laura King, with an event [the defendant] described as 'corrupt,' [the defendant] has caused or is likely to cause reputational harm to each plaintiff in that this statement will lower them in the estimation of the community or deter third persons from associating or dealing with them." The plaintiffs further alleged that the statements made by the defendant were not privileged and were published to third parties. In count two, Laura King alleged that she "had an expectation of privacy with respect to her compensation from CVHF." She further alleged that her compensation was confidential information, that the defendant "had a continuing obligation to protect th[at] confidential and private information," that its disclosure was "not a matter of legitimate public concern,"

and that the defendant invaded her privacy "by publicly disclosing" this information.[2] She alleged irreparable harm as the disclosure "will impact her continued work with CVHF as well as her ability to consult for other organizations." By way of relief, the plaintiffs requested the issuance of "[a]n ex parte temporary and permanent injunction restraining [the defendant] from making or publishing any statements about either plaintiff, the Stanwich Club or CVHF. . . ."

On July 9, 2020, the court denied the application for an ex parte temporary injunction and scheduled the matter for a hearing at a date to be determined. On July 15, 2020, the court scheduled a remote hearing on the application for a temporary injunction to be held on August 11, 2020. On August 10, 2020, the defendant filed a caseflow request in which he requested that the hearing be converted "into a status or scheduling conference." The court granted the motion and, on August 11, 2020, held a remote status conference.

On August 27, 2020, the defendant filed a special motion to dismiss the complaint pursuant to § 52-196a,[3] together with a memorandum of law and a supporting affidavit. In his motion to dismiss, the defendant asserted that each count in the complaint was "based on [the defendant's] exercise of rights protected under § 52-196a—namely, his right of free speech in connection with a matter of public concern—and [that the] plaintiffs [could not] show probable cause that they [would] prevail upon the merits of their claims." The defendant argued that the complaint should be dismissed in its entirety pursuant to § 52-196a (e) (3) and the defendant should be awarded costs and reasonable attorney's fees pursuant to § 52-196a (f) (1). In the accompanying affidavit, the defendant attested that the factual statements he had made concerning the CVHF event and the plaintiffs were truthful.

On August 31, 2020, the court issued a scheduling order in which it noted that the defendant had filed a special motion to dismiss, and it ordered that any opposition briefs, affidavits, or exhibits were to be filed on or before September 15, 2020. The court further ordered that any reply to the opposition filings was to be filed on or before September 21, 2020. The court ultimately ordered that a hearing on the defendant's special motion to dismiss was to be held on September 24, 2020. On September 4, 2020, four days after the court issued its scheduling order, the plaintiffs withdrew the action.

On October 1, 2020, the defendant filed a motion to restore the case to the docket and a memorandum of law in support thereof.[4] In the defendant's memorandum of law, he first asserted that, "[o]nce [the defendant] filed his special motion to dismiss, his right to attorney's fees and costs became vested (or, minimally, his right to have the court determine his entitlement to

fees and costs), and the plaintiffs' unilateral withdrawal 'unduly jeopardized that right and the proper administration of justice.' "

Additionally, the defendant argued that a hearing on an issue of fact had commenced when he filed his motion to dismiss, and, therefore, pursuant to General Statutes § 52-80, the plaintiffs were required to obtain permission of the court to withdraw the action after establishing cause.[5] He argued that, when ruling on a special motion to dismiss pursuant to § 52-196a, the court is required to consider the pleadings and supporting and opposing affidavits of the parties attesting to the facts upon which liability or a defense, as the case may be, is based. Therefore, the defendant claimed that the affidavit that he submitted with the special motion to dismiss was testimony that the court was required to consider under § 52-196a, and, thus, a hearing commenced upon its submission to the court.

The plaintiffs filed an objection to the motion to restore, as well as an accompanying memorandum of law. In their memorandum of law, the plaintiffs argued that the action was brought to enjoin the defendant from further engaging in unprotected speech that was injurious to the plaintiffs' good names and reputations. Additionally, they argued that they had a unilateral right to withdraw their action pursuant to § 52-80 as a hearing on the merits or, alternatively, a hearing on an issue of fact, had not commenced. The plaintiffs argued that they did not abuse their right to withdraw the action only to avoid an adverse ruling. They maintained that, had the hearing occurred, they would have "set forth with particularity the circumstances giving rise to the complaint and demonstrated probable cause within the meaning of . . . § 52-196[a]." Finally, the plaintiffs asserted that the defendant was not entitled to attorney's fees because, under § 52-196a, such fees may only be awarded after the granting of a special motion to dismiss.

The court held a hearing on the defendant's motion to restore on December 1, 2020, at which both parties presented oral arguments. On March 2, 2021, the court issued a memorandum of decision denying the motion to restore. In its memorandum of decision, the court noted that a hearing of fact does not commence until "the presiding authority begins its consideration of the merits of the claim." It also noted that, at the time the plaintiffs withdrew their action, "the plaintiffs' time frame for responding to the special motion to dismiss had not passed and no consideration of the special motion to dismiss or affidavit by the presiding authority had begun." The court concluded that, in light of the fact that a hearing on an issue of fact had not commenced, the plaintiffs had a unilateral right to withdraw the action.

Having determined that the plaintiffs were entitled

to unilaterally withdraw their action, the court then considered whether to exercise its discretion to restore the action to the active docket. In doing so, the court noted that, although "[i]n many circumstances, [it] . . . would be inclined [to] exercise its discretion and restore a case to the docket to allow a SLAPP defendant the opportunity to recover attorney's fees and costs," this was not such a case. The court concluded that its "decision [was] quite fact specific and not intended to reflect a reluctance to restore cases to the docket to provide SLAPP defendants with the relief provided by . . . [§] 52-196a when appropriate" and that its "decision should not be construed one way or another to reflect on the merits of the underlying case or to suggest that citizens do not have the right to challenge the propriety of charitable fundraising practices."

This appeal followed. Additional facts and procedural history will be set forth as necessary.

## I

First, the defendant claims that the court abused its discretion when it denied his motion to restore the action to the active docket. We interpret the defendant's brief, which is not a model of clarity, to encompass four distinct subclaims related to the court's denial of the motion to restore. First, the defendant argues that the court should have granted the motion to restore because the plaintiffs' unilateral withdrawal, which was intended to avoid an unfavorable ruling, prejudiced his vested rights to have the court consider the merits of the special motion to dismiss and request for attorney's fees.[6] Second, the defendant argues that the court should have granted the motion to restore because a hearing on an issue of fact had commenced by the time of the withdrawal of the action and, thus, the plaintiffs did not have a unilateral right to withdraw the action but needed leave of court to do so. Third, the defendant argues that, in denying the motion to restore, the court either misconstrued or misapplied § 52-196a to afford protection to those who petition the government but not to those who exercise their right to free speech, thereby minimizing his constitutional rights as compared to other SLAPP defendants. Finally, the defendant argues that this court should reverse the trial court's judgment and direct the trial court to grant the motion to restore, grant the motion to dismiss, and hold a hearing on the defendant's request for attorney's fees and costs.[7] We are not persuaded.

Before we address the merits of those subclaims, we first set forth our standard of review of a trial court's denial of a motion to restore an action to the active docket. "This court has stated previously that [t]he question of whether a case should be restored to the docket is one of judicial discretion . . . therefore, we review a court's denial of a motion to restore a case to the docket for abuse of that discretion. . . . Discretion

means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . Inherent in the concept of judicial discretion is the idea of choice and a determination between competing considerations. . . . A court's discretion must be informed by the policies that the relevant statute is intended to advance. . . . When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court . . . . Under that standard, we must make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *Palumbo* v. *Barbadimos*, 163 Conn. App. 100, 110–11, 134 A.3d 696 (2016); see also *Doe* v. *Bemer*, 215 Conn. App. 504, 512–13, 283 A.3d 1074 (2022) ("[t]he question of whether a case should be restored to the docket is one of judicial discretion" (internal quotation marks omitted)).

A

We first address the defendant's assertion that a hearing on an issue of fact had commenced by the time that the plaintiffs voluntarily withdrew the action and, thus, the plaintiffs did not have a unilateral right to withdraw the action but needed leave of court to do so. The defendant argues that the plaintiffs' right to withdraw their action unilaterally ceased when he filed his special motion to dismiss with the accompanying affidavit. We are not persuaded.

By statute, a "plaintiff may withdraw any action [returned to court] and entered in the docket of any court, before the commencement of a hearing on the merits thereof. After the commencement of a hearing on an issue of fact in any such action, the plaintiff may withdraw such action . . . only by leave of court for cause shown." General Statutes § 52-80. "This court often has used, without further explication, the phrase 'absolute and unconditional' to describe a plaintiff's right under § 52-80 to withdraw an action before a hearing on the merits has occurred. . . . We construe this broad language, however, as reflecting only that, prior to a hearing on the merits, the withdrawal of an action does not require the permission of the court." (Citations omitted.) *Palumbo* v. *Barbadimos*, supra, 163 Conn. App. 111–12.

In *Kendall* v. *Commissioner of Correction*, 162 Conn. App. 23, 130 A.3d 268 (2015), this court, in the context of a habeas petition, conducted an extensive statutory analysis concerning the issue of when a hearing on the merits has commenced pursuant to § 52-80. It reasoned

that, "with respect to a hearing on the merits, a party's right to unilaterally withdraw an action or petition ceases when the presiding authority begins or initiates formally a proceeding in which it will make a substantive determination concerning the legal or factual issues in the case. Both contemporaneous understandings of the word 'hearing' and the present definition of 'hearing on the merits' recognize the role of evidence, testimony, and argument in the ultimate determination that the court is called to make. . . . [A]pplying the word 'merits,' as construed through applicable dictionaries . . . to the 'hearing' in question demonstrates that the proceeding must concern the facts and law governing the strict legal rights of the parties as opposed to merely procedural or ancillary matters." Id., 42–43.

As previously noted, in the present case, the defendant filed his special motion to dismiss on August 27, 2020. On August 31, 2020, the court issued a scheduling order in which it noted that a special motion to dismiss was filed and ordered that any opposition briefs, affidavits, and exhibits were to be filed no later than September 15, 2020. The court further ordered that any reply to the opposition was to be filed no later than September 21, 2020. A hearing on the special motion to dismiss was scheduled for September 24, 2020. On September 4, 2020, four days after the court issued its scheduling order, the plaintiffs withdrew the action prior to filing any opposition brief or affidavits. The court, therefore, did not have an opportunity to initiate a formal proceeding in which it would make a substantive determination concerning the legal or factual issues presented in the special motion to dismiss. The court merely had addressed a procedural matter. Moreover, the court noted in its memorandum of decision that, at the time of the withdrawal, "no consideration of the special motion to dismiss or affidavit by the presiding authority had begun." In light of the foregoing, we conclude that the plaintiffs were within their rights to unilaterally withdraw the action pursuant to § 52-80. The defendant has failed to demonstrate that the court abused its discretion in denying the motion to restore based on an improper withdrawal of the action.

B

Next, the defendant argues that the court should have granted the motion to restore because the plaintiffs' unilateral withdrawal, which was intended to avoid an unfavorable ruling, prejudiced his vested rights to have the court consider the merits of the special motion to dismiss and request for attorney's fees. The defendant asserts that, once he filed his special motion to dismiss, his rights to attorney's fees and costs, or, at the very least, his right to have the court determine his entitlement to fees and costs, vested. Relying heavily on *Palumbo* v. *Barbadimos*, supra, 163 Conn. App. 100, the defendant argues that the plaintiffs' unilateral with-

drawal of the action unduly jeopardized his rights and the proper administration of justice. We are not persuaded.

In *Palumbo*, this court noted that "[t]he broad language used by this court to describe a plaintiff's right to withdraw an action must be read in conjunction with other cases that make clear that the right of withdrawal may be trumped in certain circumstances by another party's right to restore the case to the docket. . . . Any lack of authority of the court to stop the withdrawal of an action prior to a hearing on the merits in the first instance, for example, in no way extends to or diminishes the court's power to restore a previously withdrawn action to the docket. . . . This is particularly true if restoration of the action is necessary to vindicate a right acquired by another party during the course of the withdrawn litigation. . . .

"[O]ur Supreme Court [has] stated that [e]very action may be withdrawn prior to verdict or final judgment, *whenever it can be done without injuriously affecting rights of the defendant acquired by reason of the action.* . . . Our Superior Courts have relied on that language as a basis for restoring cases to the docket in which a plaintiff's voluntary withdrawal threatened a right that was acquired by the defendant in the withdrawn litigation or was done to undermine an adverse court ruling. . . .

"Although this court previously has affirmed a trial court's denial of a defendant's motion to restore a voluntarily withdrawn action to the docket, in doing so, it also recognized the trial court's inherent authority to restore such an action to the docket if necessary to vindicate a right vested in the defendant. . . .

"A plaintiff should never be permitted to abuse its right to voluntarily withdraw an action. Such abuse may be found if, in executing its right of withdrawal, the plaintiff unduly prejudices the rights of an opposing party or the withdrawal interferes with the court's ability to control its docket or to enforce its rulings." (Citations omitted; emphasis in original; footnotes omitted; internal quotation marks omitted.) Id., 112–15.

In *Palumbo*, the plaintiff brought a personal injury action but later "had withdrawn the action unilaterally and filed a second, identical action to avoid a bench trial that was the consequence of the plaintiff having missed the statutorily prescribed deadline for claiming the action to the jury trial list." Id., 102. The defendant filed a motion to restore the original action to the docket, which the trial court denied. Id., 106, 109. This court, after recognizing that a plaintiff enjoys a right to withdraw litigation unilaterally prior to a hearing on an issue of fact, "nonetheless conclude[d] that the procedural chicanery engaged in by the plaintiff . . . cannot be sanctioned because it offends the orderly and

due administration of justice. At the time the plaintiff withdrew the original action, she effectively had waived her right to elect a jury trial, and thereby vested in the defendant the right to have the parties' dispute tried to the court. The plaintiff was not entitled to abuse her right of unilateral withdrawal in order to pursue a second, identical action to avoid the consequences of her waiver." Id., 103–104. Accordingly, in *Palumbo*, this court concluded that the trial court's denial of the defendant's motion to restore reflected an abuse of its discretion, reversed the judgment of the trial court, and remanded the case to the trial court with direction to grant the defendant's motion to restore the original action to the docket. Id., 121.

In the present case, the defendant's claim is not that the plaintiffs have engaged in similar procedural chicanery. Rather, it is reasonable to interpret the defendant's claim to be that, upon his filing of a special motion to dismiss, § 52-196a, in and of itself, afforded him a vested right to have the court consider the merits of the special motion to dismiss and attorney's fees. The defendant's argument is premised on his belief that the underlying purpose of § 52-196a is to "provide relief, including financial relief, to persons who have been victimized by meritless lawsuits" and that "allowing the plaintiffs to withdraw their lawsuit before a hearing on the defendant's special motion to dismiss essentially weaponizes the anti-SLAPP statute against the party it is intended to protect."[8]

The plaintiffs argue that, under § 52-196a, attorney's fees are awarded "*only* '[i]f the court grants [the] special motion to dismiss . . . .' " (Emphasis in original.) The plaintiffs contend that, in light of the fact that a hearing was not held on the special motion to dismiss, the defendant was unable to satisfy the requirements of either § 52-196a (e) (3) or (f) (1), and he could not reasonably be found to have any right, vested or otherwise, in his attorney's fees. Additionally, the plaintiffs assert that their action is not "intended to quell conduct consistent with constitutional rights nor [is it] a meritless retaliatory suit . . . ." Therefore, they argue, the suit is not the type of action the legislature sought to prevent when it enacted § 52-196a.

Whether the act of filing a special motion to dismiss pursuant to § 52-196a vests in a defendant the right to have the court consider the merits of the special motion to dismiss and the right to attorney's fees is an issue of statutory construction and, therefore, "subject to plenary review and well established principles." (Internal quotation marks omitted.) *Canton* v. *Cadle Properties of Connecticut, Inc.*, 188 Conn. App. 36, 45, 204 A.3d 62 (2019). General Statutes § 1-2z instructs that "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining

such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

Section 52-196a (e) (1) provides in relevant part that "[t]he court shall conduct an expedited hearing on a special motion to dismiss . . . not later than sixty days after the date of filing of such special motion to dismiss . . . ." The plain and unambiguous language of the statute affords a party a right to a hearing within sixty days. As previously noted, § 52-80 provides in relevant part that a "plaintiff may withdraw any action [returned to court] and entered in the docket of any court, before the commencement of a hearing on the merits thereof. After the commencement of a hearing on an issue of fact in any such action, the plaintiff may withdraw such action, or any other party thereto may withdraw any cross complaint or counterclaim filed therein by him, only by leave of court for cause shown."

Under the directive of § 1-2z, in interpreting § 52-196a, this court must not only be mindful of § 52-80 but also must interpret § 52-196a in a manner that does not conflict with § 52-80. "[T]he legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *500 North Avenue, LLC* v. *Planning Commission*, 199 Conn. App. 115, 130, 235 A.3d 526, cert. denied, 335 Conn. 959, 239 A.3d 320 (2020). "[W]hen construing a statute, we do not interpret some clauses in a manner that nullifies others, but rather read the statute as a whole and so as to reconcile all parts as far as possible." (Internal quotation marks omitted.) *Vibert* v. *Board of Education*, 260 Conn. 167, 171, 793 A.2d 1076 (2002); see also *Perun v. Danbury*, 143 Conn. App. 313, 317, 67 A.3d 1018 (2013).

Because we are bound to give effect to both statutes, we construe the right to a hearing on a defendant's special motion to dismiss, which is afforded by § 52-196a, as being subject to a plaintiff's absolute right to withdraw an action at any time prior to a hearing, as afforded by § 52-80. Interpreting § 52-196a in this manner, consistent with its plain meaning and its relationship to § 52-80, does not yield an absurd or unworkable result. We conclude, therefore, that, at the time of the plaintiffs' withdrawal of their action in the present case, the defendant did not have the right to have the court consider the merits of the special motion to dismiss.

To the extent that the defendant urges us to consider

the legislative intent underlying § 52-196a and to construe the statute such that a right to have the court consider the merits of a special motion to dismiss is not subject to a plaintiff's unilateral right to withdraw prior to a hearing, such a method of statutory analysis runs afoul of § 1-2z. Moreover, to follow the interpretation suggested by the defendant would require us to insert an exception into § 52-80 that is not expressly stated therein. This exception would contravene the broad right to unilaterally withdraw an action that is conferred by § 52-80 that applies, by the statute's plain terms, to "*any action* returned to court and entered in the docket . . . ." (Emphasis added.) "It is the duty of the court to interpret statutes as they are written . . . and not by construction read into statutes provisions which are not clearly stated." (Internal quotation marks omitted.) *Garvey* v. *Valencis*, 177 Conn. App. 578, 586–87, 173 A.3d 51 (2017).

With respect to the defendant's alleged vested right to attorney's fees, § 52-196a (f) (1) provides in relevant part that, "[i]f the court grants a special motion to dismiss under this section, the court shall award the moving party costs and reasonable attorney's fees . . . ." It can hardly be disputed that the plain language of the statute requires the court to grant the moving party attorney's fees only *if* the court considers the merits of the special motion to dismiss and the motion itself is granted. Construing the statute according to its plain meaning does not yield an absurd or unworkable result. We conclude that the defendant did not acquire a vested right to attorney's fees by merely filing a special motion to dismiss pursuant to § 52-196a.

For the foregoing reasons, we conclude that the defendant has not demonstrated that the court's ruling prejudiced a vested right such that the court abused its discretion by denying his motion to restore.

C

Next, the defendant challenges the court's denial of the motion to restore on the ground that, in denying the motion to restore, the court either misconstrued or misapplied § 52-196a to afford protection to those who petition the government but not to those who exercise their right to free speech, thereby minimizing his constitutional rights as compared to other SLAPP defendants. We are not persuaded.

As stated previously in this opinion, we review the court's exercise of discretion in denying the motion to restore mindful that "[d]iscretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice" and that "[a] court's discretion must be informed by the policies that the relevant statute is intended to advance." (Internal quotation marks omitted.) *Palumbo* v. *Barbadimos*,

supra, 163 Conn. App. 110–11.

In the present case, in its memorandum of decision, the court stated that "[t]he legislative history [of § 52-196a] and [this court's discussion of SLAPP lawsuits in *Field* v. *Kearns*, 43 Conn. App. 265, 682 A.2d 148, cert. denied, 239 Conn. 942, 684 A.2d 711 (1996)] reflect a desire to prevent those who use litigation strategically to quell conduct consistent with a party's constitutional rights from doing so with impunity. A frequent example of the wrong sought to be addressed is the hypothetical developer with substantial resources trying to discourage average citizens from contesting a proposal before a local or state governmental entity. SLAPP suits are most insidious when a powerful private interest seeks to discourage or intimidate citizens from petitioning their government or impacting public opinion. The instant case is not such a case. While this court believes that a citizen such as the defendant has every right to bring to the attention of the public concerns about the legitimacy of fundraising by a not-for-profit entity, in this case the defendant in so doing seemed to implicate the plaintiffs, one of [whose] only connection to the controversy was his long-term employment with the entity providing a venue for the event. The other plaintiff is a private contractor, who is not a principal of the charitable organization about which the defendant has expressed concern. This case does not seem to have any of the indicia of the type of strategic litigation that the legislature expressed a desire to address. There is no indication of an attempt to intimidate the defendant by the plaintiffs who seem to have been unfortunately drawn into an ongoing dispute between CVHF and the defendant. Upon further consideration, the plaintiffs have simply elected to withdraw their action in a manner consistent with the long-established policy of allowing plaintiffs to unilaterally withdraw cases and put an end to litigation that they had previously initiated. From the court's point of view, sometimes it is just better to let litigation end quickly, and this is one such situation. . . .

"In denying this motion to restore the case to the docket, the court wishes to emphasize two things. First, this decision is quite fact specific and not intended to reflect a reluctance to restore cases to the docket to provide SLAPP defendants with the relief provided by [§] 52-196a when appropriate; and second, this decision should not be construed one way or another to reflect on the merits of the underlying case or to suggest that citizens do not have the right to challenge the propriety of charitable fundraising practices."

The defendant argues that the court improperly interpreted his action as being essentially a private dispute between him and the plaintiffs instead of an action related to the charitable fundraising activities of CVHF, which is an issue of public concern. The defendant also

argues that the court misconstrued the policy that the legislature sought to promote by reasoning that § 52-196a did not afford the same protection to his right to free speech that it affords to defendants who petition the government.

As we have stated previously in this opinion, our Supreme Court has delineated the elements of a SLAPP action, "the distinctive elements of [which] are (1) a civil complaint (2) filed against a nongovernment individual (3) because of their communications to government bodies (4) that involves a substantive issue of some public concern. . . . The purpose of a SLAPP suit is to punish and intimidate citizens who petition state agencies and have the ultimate effect of chilling any such action." (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 336 Conn. 332, 337 n.4, 246 A.3d 429 (2020), cert. denied,      U.S.      , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021). In the present case, the court correctly concluded that the plaintiff's action was not the type of action § 52-196a was enacted to address. The court aptly observed that, in the present action, the plaintiffs did not constitute a powerful private interest, nor were they seeking to discourage the defendant from petitioning the government. There appears to be no dispute that neither plaintiff was a principal of CVHF, had standing to protect the interests of CVHF, or had initiated the present action in response to the defendant's communication to a governmental body. The communications at issue were made publicly on a social network service, not to a governmental body. Even assuming, arguendo, that the defendant's Facebook post concerning the CVHF event related to a matter of public concern, the action reasonably is best characterized as a dispute between private individuals rather than an attempt to intimidate the defendant for strategic purposes related to the activities of CVHF. We note, further, that the defendant's characterization of the court's reasoning is belied by the court's admonition that its ruling should not be interpreted "to suggest that citizens do not have the right to challenge the propriety of charitable fundraising practices."

In light of the foregoing, we conclude that the court did not abuse its broad discretion in denying the motion to restore.

II

Last, the defendant claims that this "court can fashion a procedural mechanism to guide trial courts" in the event that an issue similar to the issue raised in this appeal arises again. Specifically, he suggests that we "should adopt a rebuttable presumption that [a] withdrawal [filed in response to a special motion to dismiss pursuant to § 52-196a] was filed to avoid an adverse ruling." We conclude that such a presumption is unnecessary. As our established case law recognizes, the issue of whether to restore a case to the active docket is best

entrusted to the sound discretion of the trial court and evaluated on a case-by-case basis.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Section 52-196a provides statutory protection against what has become known in our jurisprudence as a SLAPP lawsuit. "SLAPP is an acronym for strategic lawsuit against public participation, the distinctive elements of [which] are (1) a civil complaint (2) filed against a nongovernment individual (3) because of their communications to government bodies (4) that involves a substantive issue of some public concern. . . . The purpose of a SLAPP suit is to punish and intimidate citizens who petition state agencies and have the ultimate effect of chilling any such action." (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 336 Conn. 332, 337 n.4, 246 A.3d 429 (2020), cert. denied,     U.S.    , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021). "Under this statutory scheme, a party may file a special motion to dismiss when the opposing party's complaint is based on the moving party's exercise of, among other things, the right of free speech or the right to petition the government in connection with a matter of public concern. See General Statutes § 52-196a (b); see also General Statutes § 52-196a (e) (3) (describing circumstances under which trial court must grant party's special motion to dismiss). Although the statutory protection against SLAPP lawsuits does not create a substantive right, the procedural mechanism that § 52-196a establishes, namely, the special motion to dismiss, provides a moving party with the opportunity to have the lawsuit dismissed early in the proceeding and stays all discovery, pending the trial court's resolution of the special motion to dismiss. See General Statutes § 52-196a (d). If the court grants the special motion to dismiss, the moving party is also entitled to costs and reasonable attorney's fees." *Priore* v. *Haig*, 344 Conn. 636, 659, 280 A.3d 402 (2022).

[2] The defendant is a cofounder and a former member of the CVHF board of directors.

[3] General Statutes § 52-196a provides in relevant part: "(b) In any civil action in which a party files a complaint, counterclaim or cross claim against an opposing party that is based on the opposing party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, such opposing party may file a special motion to dismiss the complaint, counterclaim or cross claim. . . .

"(e) (1) The court shall conduct an expedited hearing on a special motion to dismiss. The expedited hearing shall be held not later than sixty days after the date of filing of such special motion to dismiss . . . .

"(2) When ruling on a special motion to dismiss, the court shall consider pleadings and supporting and opposing affidavits of the parties attesting to the facts upon which liability or a defense, as the case may be, is based. . . ."

[4] Attached to the defendant's memorandum in support of his motion to restore was a letter, purportedly sent by his counsel to the plaintiffs' counsel via email on July 31, 2020, stating that, if the plaintiffs did not withdraw the action, the defendant would file a special motion to dismiss the action pursuant to § 52-196a.

[5] General Statutes § 52-80 provides in relevant part: "The plaintiff may withdraw any action so returned to and entered in the docket of any court, before the commencement of a hearing on the merits thereof. After the commencement of a hearing on an issue of fact in any such action, the plaintiff may withdraw such action, or any other party thereto may withdraw any cross complaint or counterclaim filed therein by him, only by leave of court for cause shown."

[6] We note that, at various points in his brief, the defendant asserts that he had a right to a "hearing" and a right to have the court "rule" on the special motion to dismiss. We interpret the substance of his appellate argument to implicate his right to have the court consider the merits of the special motion to dismiss.

[7] We will address these subclaims in a different order than the one in which they appear in the defendant's brief. We observe that the fourth subclaim relates to the remedy sought by the defendant should he prevail on the merits of his claim. In light of our conclusion that the court did not abuse its discretion in not restoring the action to the active docket, we need not address the merits of this subclaim.

[8] The defendant relies on a California Court of Appeal case, *Liu* v. *Moore*,

69 Cal. App. 4th 745, 81 Cal. Rptr. 2d 807 (1999), in which the court reversed a trial court's decision not to award attorney's fees to an individual who was named as a defendant in a third-party cross complaint after the cross complaint plaintiffs withdrew their complaint following the individual's filing of a special motion to strike pursuant to California's anti-SLAPP statute. Specifically, the defendant points out that the California Court of Appeal reasoned that "SLAPP plaintiffs could achieve most of their objective with little risk—by filing a SLAPP suit, forcing the defendant to incur the effort and expense of preparing a special motion to strike, then dismissing the action without prejudice. The specter of the action being refiled . . . would continue to have a significant chilling effect on the defendant's exercise of its [f]irst [a]mendment rights." (Internal quotation marks omitted.) Id., 753. The defendant urges us to follow this approach in the present case, and he argues that the court's decision was not " 'informed by the policies that the relevant statute is intended to advance.' *Vargas* v. *Doe*, 96 Conn. App. 399, 409 [900 A.2d 525, cert. denied, 280 Conn. 923, 908 A.2d 546 (2006)]."

We are not persuaded to follow *Liu*, which is not binding on this court. Nor do we analyze the issue before us by first considering the legislative policy underlying § 52-196a. Rather, as is reflected in our discussion of this subclaim, we are able to resolve the present issue by undertaking an analysis of the plain meaning of the statutes at issue pursuant to General Statutes § 1-2z.

———————————————